UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS


_____
                              )
UNITED STATES OF AMERICA,     )
                              )
                              )
        v.                    )
                              )   CR. NO. 97-40009-NMG
                              )
                              )
ENRICO M. PONZO,              )
            Defendant.        )
_____)


**<u>Findings and Order the on Government's Motion for Access to Certain Documents</u>**
**January 3, 2012**

**<u>Introduction</u>**

　　The Defendant, Enrico Ponzo ("Ponzo"), was arrested in Idaho in February of 2011 after being a fugitive on the above Indictment since 1997. Upon his return to Massachusetts, he applied for, and received, court appointed counsel. The Government now moves for access to financial affidavits filed by Ponzo in support of that application. For the reasons set forth below, I grant the motion in part and deny it in part.

**<u>History</u>**

　　The charges against Ponzo include: conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. §1959; use of firearms, in violation of 18 U.S.C. §924**;** attempt to murder and assault with a dangerous weapon, in violation of 18 U.S.C. §1359; two counts of use of a machine gun in the commission of a violent crime, in violation of 18 U.S.C. §924; conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §846; and interference with commerce by threats of violence, in violation of 18 U.S.C. §1951. Those

charges were instituted against Mr. Ponzo in 1997 and resulted in the issuance of a warrant which remained open until February 4, 2011, when he was arrested in the District of Idaho. Within four days of his arrest, Massachusetts counsel, Norman S. Zalkind, moved this court to be appointed to represent Ponzo. (Docket No. 1373). District Judge Gorton denied that motion, without prejudice, to renew it once the Defendant filed the "appropriate papers for the appointment of counsel." Thereafter, the case was referred to me for pretrial proceedings and to make a determination on the appointment of counsel.

At Ponzo's arraignment on March 25, 2011, the following colloquy took place:

THE COURT: . . . If you would like court appointed counsel I am prepared to appoint attorney Duncan[1] to represent you. I am prepared to appoint him over the objection of the government to the extent they have an opportunity or ability to object to that appointment . . . . However that appointment is subject to you filing with the Court a financial affidavit under oath that will be for my eyes only from which I will make a determination of your financial eligibility for counsel, okay?

THE DEFENDANT: Thank you, Your Honor.

*Trans. Of Arraignment and Hearing Re: Counsel, March 25, 2011*, at p. 7.

On March 25th, Ponzo submitted a CJA 23 Financial Affidavit ("CJA 23"), "certif(ied) under penalty of perjury" in support of his application for appointed counsel. That submission was sealed by the court on the same day. (Docket No.1383). On March 29, 2011, I ordered the Defendant to supplement that filing by filling out a more detailed financial statement, each page of which was to be signed under the pains and penalties of perjury. *See* (Docket No. 1387). This documentation was filed under seal with the Court on April 1, 2011. On July 29, 2011, the Government filed the Government's Motion for Access to Certain Documents (Docket No.1422). Those "Certain Documents" are the completed CJA 23 filed by the Defendant on

---

[1] Attorney Duncan is a partner in the firm of Zalkind, Rodriguez, Lunt and Duncan, L.L.P.; Norman Zalkind is also a partner in this firm.

March 25, 2011, and the supplemental financial form filed thereafter. That motion appears to have been triggered by a search of Ponzo's Idaho home on March 28, 2011, which resulted in the seizure of the contents of a safe under the floor of a bedroom closet. That safe contained approximately $102,000 in currency, and gold coins with an estimated value of $65,000. The Government believes that Ponzo did not disclose these assets in his application for court appointed counsel.

## Discussion

The Government seeks the financial information which Ponzo provided in his application for court appointed counsel in order to establish whether he falsely and fraudulently failed to disclose all of his assets in that application. If he has failed to do so, he could face additional prosecution for perjury. The Defendant argues that disclosure of that information would unduly intrude on his privacy interests and create a constitutionally untenable conflict between his Fifth Amendment privilege against self-incrimination and his Sixth Amendment right to counsel.

The Sixth Amendment provides that " '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense.' If a criminal defendant cannot afford private counsel, the trial court must appoint counsel to represent him, absent a knowing and explicit waiver of the right to counsel." *United States v. Gravatt*, 868 F.2d 585, 588 ($3^d$ Cir. 1989)(quoted case omitted). The Criminal Justice Act of 1964, 18 U.S.C. §3006A, ("CJA") sets out the duties of the court regarding the appointment of counsel for an indigent defendant. The CJA provides that every defendant who is entitled to representation and appears in court without a lawyer shall be advised by the United States magistrate judge or court:

>   that he has the right to be represented by counsel and that counsel will be appointed to represent him if he is financially unable to obtain counsel. Unless the person waives representation by counsel, the United States magistrate or the court, if satisfied after appropriate inquiry that the person is financially unable to obtain counsel, shall appoint counsel to represent him.

*Id.,* at §3006A(b); *see also Gravatt*, 868 F.2d at 588.

"The defendant bears the burden of proving that he is financially unable to obtain counsel. As part of this burden, he 'has the responsibility of providing the court with sufficient and accurate information upon which the court can make an eligibility determination.'" *United States v. Salemme*, 985 F.Supp. 197, 201 (1997)(internal citation omitted) quoting *AO Guide, infra,* at § 210.40.20(f). Although no set method for determining defendant's financial status is mandated, typically, a standard form financial affidavit, *i.e.,* the CJA 23, is used by the court to determine whether a defendant is eligible for the appointment of counsel. *See United States v. Murphy*, 469 F.3d 1130, 1135 (7th Cir. 2006)(defendant seeking appointment of counsel usually fills out CJA 23, but CJA does not require any particular method of ascertaining defendant's financial status; exact nature of inquiry is left to discretion of judge). As noted above, Ponzo filled out a CJA 23 and, upon order of the Court, filed a supplemental financial form in support of his request for court appointed counsel. The Government seeks access to both Ponzo's CJA 23 and the supplemental form.

The statute is silent about disclosure of documents demonstrating a defendant's financial eligibility for CJA status. However, the Administrative Office of the United States Courts ("Administrative Office"), under the direction of the Judicial Conference, has issued interpretive guidelines to assist the courts in applying the CJA, *see* Administrative Office of the United States Courts, *Guide to Judiciary Policies and Procedures, Vol. 7 Pt. A* ("*AO Guide*"). The AO Guide provides, in pertinent part, that as a *general* principle such information should be made available to the public:

> Generally, such information which is not otherwise routinely available to the public should be made available unless it:
>
> > (a) is judicially placed under seal;
> >
> > (b) could reasonably be expected to unduly intrude upon the privacy of attorneys or defendants;
> >
> > (c) could reasonably be expected to compromise defense strategies, investigative procedures, attorney work product, the attorney-client relationship or privileged information provided by the defendant or other sources; or
> >
> > (d) otherwise adversely affect the defendant's right to the effective assistance of counsel, a fair trial, or an impartial adjudication.

*Id.,* at §510.30; *United States v. Gonzalez*, 150 F.3d 1246, 1265 (10th Cir. 1998)("Neither the statute nor the Administrative Office's rules specify whether [the procedure regarding appointment of counsel] is to be done ex parte"); *see also Murphy*, 469 F.3d at 1130 (appropriate inquiry under CJA does *not* require court to conduct *ex parte*, *in camera* hearings to determine if defendant entitled to court appointed counsel).

In addition to the advisory guidelines adopted by the Administrative Office, the United States District Court for the District of Massachusetts, as required by the CJA[2], has adopted a Plan for Implementing the Criminal Justice Act of 1964, as Amended 18 U.S.C. §3006A ("Massachusetts CJA Plan"). In contrast to the Administrative Office's advisory guidelines, which presumes that such information should be made available to the public, the Massachusetts CJA Plan provides, in relevant part, that: ". . . . All statements made by a defendant in requesting counsel or during the inquiry into eligibility shall be either (a) by affidavit sworn to before a judicial officer, a court clerk or his or her deputy, or a notary public, or (b) under oath before a judicial officer. A financial affidavit shall not be considered part of the public record,

---

[2] The CJA requires that: "Each United States district court . . . place in operation . . . a plan for furnishing representation for any person financially unable to obtain adequate representation." 18 U.S.C. §3006A(a)

5

unless so ordered by the judicial officer, after notice and a hearing.". *Id.*, at Part V.C. Thus, under the Massachusetts CJA Plan, the Defendant's financial statement is not "available" as that term is used in the AO Guide and is not subject to disclosure without the requisite hearing. In this case, the Government's motion for access to Ponzo's CJA 23 and supplemental form and the subsequent proceeding regarding the same satisfies the Massachusetts CJA Plan's notice and hearing requirement. The question now becomes whether the Government has established that disclosure is warranted, and, if so, when such disclosure should take place.

"The Fifth Amendment privilege against self-incrimination protects the accused from being incriminated by his or her own compelled testimonial communications." *United States v. Hickey*, 997 F.Supp. 1206, 1207 (N.D.Cal.1998) (" *Hickey I* "), *appeal dismissed* on other grounds, *United States v. Hickey*, 185 F.3d 1064 (9th Cir. 1999). To claim the Fifth Amendment privilege against self-incrimination, the accused must be confronted "with substantial hazards of self-incrimination that are 'real and appreciable' and not merely 'imaginary and unsubstantial.'" *Seattle Times Co. v. United .States Dist. Court,* 845 F.2d 1513, 1518 (9th Cir. 1988)(citation to quoted case omitted); *see also Hickey I*, 997 F.Supp. at 1207. At the same time, "the information that would be revealed by direct answer need not be such as would itself support a criminal conviction, however, but must simply 'furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime.' " *United States v. Neff*, 615 F.2d 1235, 1239 (9th Cir.), *cert. denied*, 447 U.S. 925, 100 S.Ct. 3018 (1980)(quoting, *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 95 8 (1951)). It is sufficient "if the responses would merely 'provide a lead or clue' to evidence having a tendency to incriminate." *Neff*, 615 F.2d at 1239 (citation to quoted case omitted). Should the Government use Ponzo's financial statements in the currently pending case, and they have represented that they will, it follows that he has a Fifth Amendment privilege against self-incrimination with respect to those statements.

However, Ponzo's Fifth Amendment privilege with respect to his CJA 23 and supplemental form is not a bar to the Government having access to the information, nor does it ultimately bar its use against him. In this case, Ponzo chose to file his CJA 23 and the supplemental form *before* asserting that the submissions would create a tension between his Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel. Indeed, it was not until the Government moved for disclosure that Ponzo argued that information he provided in his CJA 23 and/or supplemental form could be self-incriminating.

> [W]hen ... a defendant asserts a colorable claim that disclosure to the government of a *completed* CJA 23 would be self-incriminating, the court may not adopt an unconditional requirement that the defendant *complete* the CJA 23 *before* his application for appointment of counsel will be considered. To do so may place the defendant in the constitutionally untenable position of having to choose between his Sixth Amendment right to counsel and his Fifth Amendment privilege against self-incrimination.

*Gravatt*, 868 F.2d at 589 (emphasis added); *see also Salemme*, 985 F.Supp. at 202.

This process, whereby a defendant asserts his Fifth Amendment claim *in advance* of submitting the financial information, makes eminent sense and honors the protections afforded by both the Fifth and Sixth Amendment. Unfortunately, this is not the path that Ponzo chose to take. Instead, he chose the wait and see approach; twice he submitted financial information without raising a Fifth Amendment objection. However, once the Government filed its motion for disclosure, he immediately invoked his Fifth Amendment rights to shield the information from the Government's view. For him to now argue that his submissions are protected against a possible prosecution for perjury gives him the best of both worlds; he could submit financial information under oath, with impunity, knowing that if the veracity of the information is questioned it cannot be used against him. Given the Court's need to rely on accurate and truthful representations from litigants, Ponzo's position is untenable. Simply put, Ponzo cannot hide behind the Fifth Amendment to shield himself from prosecution *if* he chose to lie in order to obtain court appointed counsel. Applying the Supreme Court's reasoning in *United States v.*

7

*Kahan,* 415 U.S. 23, 94 S.Ct. 1179 (1974)(*per curiam*) to this case: "the incriminating component of [Ponzo's false statements, if any, on his CJA 23 and/or supplemental form] derives not from their content, but from [his] knowledge of their falsity …The protective shield of *Simmons [v. United States*, 390 U.S. 377, 389-394, 88 S.Ct. 967 (1968)] [3] is not to be converted into a license for false representations on the issue of indigency free from the risk that the claimant will be held accountable for his falsehood." *Id.*, at 243, 94 S.Ct. 1179. Accordingly, the ultimate question becomes not *if* the Government should be allowed access to the requested information for possible use in a perjury prosecution, but when.

The Second Circuit has applied a prohibition against the Government using such information in its case in chief. "We are of the view that the government should not be permitted to use as part of its *direct case* any testimony given by a defendant at a hearing where he is seeking forma pauperis relief or the assignment of counsel on the ground of his financial inability to pay court costs, to procure the minutes, or to secure counsel. The defendant should enjoy his constitutional rights to counsel and to appeal and the means of supporting his assertion of these rights by his own testimony without running the risk that thereby he may be incriminating himself with respect to the charges pending against him." *United States v. Branker,* 418 F.2d 378, 380 (2d Cir. 1969)(emphasis supplied). *Branker* analogized the providing of financial information to secure court appointed counsel to testimony given by a defendant in a motion to suppress evidence. In both situations the defendant should not be forced to choose which right (*i.e.*, the right to court appointed counsel/the right to suppress illegally obtained evidence versus the right not to incriminate oneself) to prosecute to the exclusion of the other. *See Simmons*, 390 U.S. at 389-394, 88 S.Ct. 967 and note 3, *supra*.

---

[3] In *Simmons,* the Supreme Court held that a defendant should not have to choose between his Fourth and Fifth Amendment rights, and therefore, a defendant's testimony at a hearing to suppress evidence on Fourth Amendment grounds cannot subsequently be used against him at trial on the issue of guilt. *See Simmons v. United States*, 390 U.S. 377, 387-94, 88 S.Ct. 967 (1968).

In this case, the Government does not propose to use the requested information as evidence to prove the pending charges against Ponzo, a use which would be prohibited by all Courts of Appeal that have addressed the issue. *See e.g., United States v. Aguirre,* 605 F.3d 351 (6th Cir. 2010)(*truthful* information provided on financial affidavit should not be admitted at trial against defendant to establish guilt); *United States v. Hardwell,* 80 F.3d 1471 (10th Cir. 1996)(government cannot introduce financial affidavit to prove defendant had no legitimate income in support of money laundering charge); *United States v. Anderson,* 567 F.2d 839 (8th Cir. 1977); *Branker*, 418 F.2d at 380-81). Instead, if the Government determines that Ponzo failed to provide accurate information on his CJA 23 and/or supplemental form, the Government proposes to obtain a superseding indictment to join the perjury charge with the pending charges. Given the nature of the charges currently pending against Ponzo, it is not readily apparent that evidence that he failed to disclose assets on his financial affidavit (should that be the case) could be used to establish his guilt with respect thereto. Nonetheless, if there is any chance that such evidence could be used against Ponzo with respect to one or more of the charges currently pending against him, then introduction of such evidence would create the previously described constitutional conundrum., *i.e.,* use of such information would impinge on both his Fifth Amendment right against self-incrimination and Sixth Amendment right to counsel. If, on the other hand, the information remains sealed until after conclusion of the trial on the pending charges, Ponzo's Fifth Amendment interest will diminish *vis a vis* the Government's interest in disclosure of the information for purposes of pursing a perjury charge: "[t]he Government . . . maintains the right to investigate possible perjury in [the CJA 23 and/or supplemental form] after trial and ultimately the truth seeking function will not be compromised." *United States v. Hyde*, 208 F.Supp.2d 1052, 1054 (N.D.Cal. 2002)(internal citation omitted).

The Branker rubric makes eminent sense. Sealing Ponzo's financial affidavits only until the underlying case is concluded, protects his constitutional rights and holds him accountable if he filed a deliberately misleading financial statement under the pains and penalties of perjury. To hold otherwise (that is to require that the information remain sealed indefinitely) would trivialize the rule requiring that the financial statement be under oath, encourage misrepresentation, and leave the process for appointment of counsel remediless against perjury. Accordingly, I am ordering the release of the sought after financial statements at the conclusion of this case whether by trial or plea. In addition, if the Defendant chooses to testify the Government may petition Judge Gorton for access to the information at the conclusion of the Defendant's testimony for use as impeachment evidence.[4]

## **Conclusion**

The Government's Motion For Access To Certain Documents (Docket No. 1422) is *granted* in part and *denied*, in part, as provided in this Order.

/s/ Timothy S. Hillman
TIMOTHY S. HILLMAN
UNITED STATES MAGISTRATE JUDGE

---

[4] The First Circuit has not addressed the question of whether the use of the financial statement for impeachment purposes is permitted. For an interesting discussion of use of a financial affidavit such as a CJA 23 for impeachment purposes *see United States v. Sandoval*, No. CR 09-3456 JB, 2010 WL 4338061, *8 at n. 5 (D.N.M. 2010)