UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | )  | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 97-40009-NMG-5 |
| | ) | |
| ENRICO M. PONZO | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

SECOND ORDER ON DEFENDANT'S REQUESTS FOR
HYBRID REPRESENTATION AND NEW COUNSEL

October 31, 2012

SOROKIN, C.M.J.

A grand jury indicted Enrico Ponzo in 1997. After many years as a fugitive, Ponzo was arrested in Idaho in early 2011. On February 10, 2011, Attorney Norman Zalkind filed a motion with the Court requesting appointment as Ponzo's counsel under the Court's Criminal Justice Act plan. Docket #1373. In the motion, Zalkind recounted, inter alia, that he had represented Ponzo in seven different prior cases, and that he also had represented Ponzo's parents. Judge Gorton denied this motion without prejudice. In the margin order, Judge Gorton directed that first Ponzo would have to establish his indigency, at which point the Court would consider appointing Attorney David Duncan, Zalkind's partner, who, unlike Zalkind, is a member of the CJA panel. Docket #1379.[1]

On March 25, 2011, Ponzo made his initial appearance in this Court. The Government

---

[1] Attorney Zalkind had been a member of the panel for many years, but had not sought reappointment to another term.

objected to Duncan's appointment, arguing that the Court's CJA plan does not permit a defendant to select his appointed attorney and that the Court would violate this principle by appointing Attorney Duncan. Ponzo did not object to Duncan's appointment. The Court appointed Duncan.

The case proceeded with the Government disclosing voluminous quantities of discovery; as a result, Attorney Duncan required a substantial period of time to review the discovery and make follow-up discovery requests to the Government. <u>See, e.g.</u>, Docket #1432. The parties also litigated disputes over access to Ponzo's financial affidavit and detention. On June 1, 2012, Ponzo filed four discovery related motions. Docket #1465-68. On June 11, 2012, the case was reassigned to the undersigned for pretrial management due to Judge Hillman's appointment as a United States District Judge.

On June 27, 2012, Ponzo was present for a hearing on the discovery motions, and on July 19, 2012, the Court issued a memorandum and order resolving each of the motions. Docket #1477. On August 8, 2012, the Court held a status conference with counsel, at which Ponzo again was present. Although the case appeared ripe at that time to return to Judge Gorton, at the request of the parties, a further status conference was scheduled for October 23, 2012 to provide an opportunity for the Government to make early disclosure of Jencks material and to provide an opportunity for the defendant to review that material.

During the eighteen months of pretrial litigation preceding the August 8, 2012 status conference, Ponzo had not requested, orally or in writing, either to have Attorney Duncan replaced or to proceed pro se. Indeed, Ponzo had not expressed to the Court, either orally or in writing, any dissatisfaction with Attorney Duncan's performance.

On September 24, 2012, Ponzo filed a motion for "Pro Se Hybrid Representation," in which he asked permission "to act as co-counsel, Pro Se, due to the fact that the defendant and appointed counsel have very different views of Theories of Defense and appointed counsel refuses to make motions or do essential acts demanded by Ponzo." Docket #1498. The Court held a hearing on this Motion on September 28, 2012. The Government opposed hybrid representation. Docket #1503. At the conclusion of the hearing, the Court denied the request for hybrid representation and scheduled a further status conference for October 9, 2012.[2]

Notwithstanding the Court's ruling, Ponzo proceeded to file motions on his own behalf. See Docket #1504-05. At the October 9th status conference, Attorney Duncan filed a motion to withdraw, and Ponzo renewed his request for hybrid representation. Ponzo's request was, again, denied. Ponzo then requested permission to proceed pro se. After a lengthy colloquy, the Court concluded Ponzo had knowingly and voluntarily waived his right to counsel. See Docket #1508. The Court took under advisement Ponzo's request for standby counsel, but denied it in an October 10, 2012 written order. Id. Accordingly, the Court allowed Attorney Duncan to withdraw, but stayed the order. Id. Because of the gravity of the decision, and in light of Ponzo's requests first for hybrid representation and then for standby counsel, the Court scheduled a further status conference for October 16, 2012.

At the October 16th hearing, Ponzo appeared pro se and requested the appointment of

---

[2]On October 17, 2012, Ponzo filed a pro se notice of appeal narrowly challenging this Court's oral order, at the conclusion of the October 9th status conference, denying Ponzo's request for hybrid representation. Although that appeal remains pending, this Court retains jurisdiction to decide issues beyond the question Ponzo has appealed. In addition, neither Ponzo nor the Government have suggested that the notice of appeal in any way limits this Court's ability to address matters related to the appointment of counsel.

new counsel to represent him. He also stated he did not wish to proceed pro se, notwithstanding what he told the Court on October 9th. The Court scheduled a further conference for October 25, 2012, so that it could hear from Attorney Duncan as well.

At the October 25th hearing, Ponzo reiterated his request for appointment of new counsel. At this hearing, as had occurred at the prior hearings, the Court conducted a sealed, ex parte discussion with Attorney Duncan and Ponzo. During the sealed portion of the hearing, Attorney Duncan reported that he and Ponzo had "very different views" regarding both how to proceed with the defense of this case and what issues were important. Attorney Duncan reported that these issues had developed over the past two or three months, and that he and Ponzo had been unable to reconcile them. Ponzo echoed Attorney Duncan's statements. Ponzo told the Court that he wanted Duncan to investigate certain matters and file certain motions, neither of which Attorney Duncan was doing in light of their differing views as to how to defend the case.

After the sealed portion of the hearing, the Court stated a tentative view that Ponzo could proceed with Attorney Duncan and invited comment. Attorney Duncan stated he did not "see how [he] can be [Ponzo's] lawyer given his views and my views." He further stated his opinion that there had been a "breakdown in the attorney-client relationship." Ponzo likewise objected to proceeding with Attorney Duncan, citing fundamental and irreconcilable differences regarding how to proceed. The Government, based on the history of this matter and particularly the statements made by Attorney Duncan and Ponzo, took the position that Ponzo was constitutionally entitled to the appointment of new counsel. The Government reiterated this position in a subsequently filed post-hearing submission. Docket #1534. The Court took the matter under advisement.

## I. Status of Counsel

Several conclusions are plain. Ponzo does not wish to represent himself, despite his assertions to the contrary during the colloquy on October 9, 2012. He wants to pursue a certain line of defense, but he does not desire to do so on his own behalf. This is evidenced by Ponzo's series of counsel-related requests: first, to proceed as co-counsel, not pro se; second, to proceed pro se with standby counsel (which I now conclude Ponzo thought would constitute hybrid representation by another name); and third, to proceed with new counsel once the Court rejected both hybrid representation and standby counsel. Accordingly, I vacate the findings of fact and conclusions of law set forth in my October 10, 2012 Order (Docket #1508), and the companion findings made on the record on October 9, 2012, regarding Ponzo's waiver of counsel and request to proceed pro se.

The only question remaining is whether to direct Ponzo to proceed with Attorney Duncan or to allow the request for the appointment of new counsel. On one hand, Ponzo initially requested representation by Attorney Duncan's partner and accepted Attorney Duncan's appointment. He then proceeded with Attorney Duncan as his counsel, and without complaint or objection, for eighteen months as the parties wrangled over various preliminary and discovery matters. During this period, Attorney Duncan invested substantial effort in reviewing the voluminous discovery in this case and vigorously contesting numerous discovery-related matters. Only as the case was poised to return to Judge Gorton for briefing of dispositive motions and an initial pretrial conference did Ponzo raise his first complaint. On the other hand, the Government intends to supercede the indictment to add new charges that have been under investigation since Ponzo's arrest last year. The Government has agreed to voluntarily respond to additional

discovery requests made by Ponzo which concern events from twenty years ago and, thus, the Government will need additional time to research these requests. And, the Court has not yet set a trial date.

Ponzo, as an indigent defendant, has the right to representation by appointed counsel, though not the right to have a particular lawyer to represent him. United States v. Allen, 789 F.2d 90, 92 (1st Cir. 1986) (citing United States v. Poulack, 556 F.2d 83 (1st Cir. 1977)). He is entitled to demand a different appointed lawyer "for good cause." Id. (citing United States v. Young, 482 F.2d 993, 995 (5th Cir. 1973)). While the defendant's loss of trust in his attorney is "certainly a factor in assessing good cause, it is, standing alone, insufficient." Id. at 93 (citing Thomas v. Wainwright, 767 F.2d 738, 742 (11th Cir. 1985)).

Attorney Duncan and Ponzo have come to a fundamental disagreement over how to defend this case. Attorney Duncan declines to assert the defenses Ponzo vehemently desires.[3] This disagreement has come to pervade the entire preparation of the case, including discussions regarding what motions to file and how to proceed with discovery and investigation. See Florida v. Nixon, 543 U.S. 175, 187 (2004) (noting attorney's duty to consult with his client "regarding 'important decisions,' including questions of overarching defense strategy") (citing Strickland v. Washington, 466 U.S. 668, 688 (1984)); Mass. Rules of Prof'l Conduct R. 1.2(a) & Comment (requiring attorney to "consult" with his client "about the general objectives of the general objectives of the representation and the means of achieving them"). At this time, and at this stage of the proceedings, the disagreement suffices to establish good cause.

---

[3]Notably, nothing before the Court suggests that pursuing the defense Ponzo desires presently poses an ethical conflict for Attorney Duncan.

The complaint is not a momentary one. Substantial work remains before this case proceeds to trial. Cf. United States v. Mota-Santana, 391 F.3d 42, 48 (1st Cir. 2004) (stating that, in considering "the ultimate question whether the disagreements between lawyer and client were likely to preclude effective assistance in the defense, we have in mind that the work of a lawyer for defendant was practially at an end."). The dispute pertains to "an issue that is still live," United States v. Myers, 294 F.3d 203, 208 n.1 (1st Cir. 2002) – how to prepare and defend the case. Although Attorney Duncan and Ponzo plainly had an amiable working relationship at the outset of this process (notwithstanding a deep substantive disagreement), their relationship has deteroirated in the course of the last month as they have grappled with their conflicting perspectives on the defense of this case. I can no longer conclude that they can engage in meaningful communication such as to permit Attorney Duncan to present an adequate defense, especially in light of the substantive disagreement.

The Court seriously considered requiring Ponzo to proceed with Attorney Duncan in light of his able performance, the substantial time and effort he has invested, and the resulting delay and expense occasioned by the appointment of new counsel. New counsel is nonetheless warranted, however, for the reasons already noted, as well as the considered views expressed by Attorney Duncan and the Government. Accordingly, Attorney Duncan's motion to withdraw is ALLOWED. This ruling is STAYED until the conclusion of the initial pretrial conference before Judge Gorton (which is presently set for November 1st). The request by Ponzo to have successor counsel appointed under the CJA plan is ALLOWED.

In addition, the Court CAUTIONS Ponzo that it has denied his requests to serve as "co-counsel" or to proceed with "hybrid" representation. Over the past several weeks, the Court has

been concerned that Ponzo has wanted only co- or hybrid representation, rather than to proceed pro se or to obtain successor counsel. However, after careful consideration, the Court is satisfied that new counsel should be appointed. This decision in no way allows Ponzo to file motions on his own behalf. He remains the "client," and his new counsel will be the only party permitted to present issues or argument, whether written or oral, to the Court on his behalf.

Finally, Ponzo's request to have the Court appoint either Attorney Grossberg or Goldstein is DENIED. It is well settled that criminal defendants are not entitled to counsel of their choice. Poulack, 556 F.2d at 86. The Court's CJA plan does not contemplate or provide for defendants to interview, nominate, or select attorneys from the CJA list, nor does it contemplate in the ordinary case the appointment of non-CJA attorneys. Here, Attorney Goldstein's filing offering to serve, if appointed, conditions his offer on the appointment of a non-CJA lawyer as an additional counsel in the case. Docket #1528. No extraordinary circumstances in this case support the appointment of any lawyers other than from the CJA list. Accordingly, the Court hereby appoints Attorney Jack Cunha, the CJA duty attorney on the date this Order is issued. Based upon the filings by the Government, no conflicts preclude this attorney from representing Ponzo.

## II. Speedy Trial

The Court hereby EXCLUDES the time period from October 23, 2012 until October 31, 2012 under the Speedy Trial Act. See 18 U.S.C. § 3161(h)(1)(D) & (H).

## III. Final Status Report

A trial is anticipated in this matter; the Government estimates it will last six weeks. As of October 31, 2012, seventy days remain under the Speedy Trial Act to try this matter. The

discovery to occur prior to the Initial Pretrial Conference in this matter is concluded with the exception of the following matters: (1) the completion of early voluntary disclosure of Jencks material by the Government; (2) the appeal by the defendant from the undersigned's discovery order and the further discovery, if any, ordered by the Court after ruling on the objections. In addition, because the question of counsel was uncertain at the time of the final status conference before the undersigned on October 25, 2012, the Court should permit defendant to raise at the Initial Pretrial Conference on November 1, 2012, any issue that defendant could have, but did not raise at the Final Status Conference.

In order to expeditiously move this case forward in light both of the age of the Indictment and the time that has elapsed since the defendant's initial appearance in this Court, I RECOMMEND that, at the November 1, 2012, conference, the Court:

1. Establish a reasonable period for successor counsel to read into this case;

2. Establish a deadline for the filing of dispositive motions by the defendant twenty-one days after the conclusion of the period defined in paragraph 1 with any responses by the Government due fourteen days thereafter;

3. Establish a firm trial date; and

4. Consider the timing of any anticipated superceding Indictment as it might bear on the foregoing.

SO ORDERED.

   /s / Leo T. Sorokin
Leo T. Sorokin
Chief United States Magistrate Judge