United States District Court
District of Massachusetts

|                           |   |                |
|---------------------------|---|----------------|
| **UNITED STATES OF AMERICA,** | ) |                |
|                           | ) |                |
| v.                        | ) | Criminal No.   |
|                           | ) | 97-40009-NMG   |
| **ENRICO PONZO,**         | ) |                |
|                           | ) |                |
| Defendant.                | ) |                |

**MEMORANDUM & ORDER**

GORTON, J.

This case arises out an investigation of members and associates of the Patriarca organized crime family, a faction of New England La Cosa Nostra. Enrico Ponzo ("Ponzo"), an alleged associate, disappeared in 1994, three years before he and others were indicted for (among other things) conspiracy to commit murder, violent crimes in aid of racketeering, and firearms violations. He was apprehended in February, 2011, in Marsing, Idaho, where he had been living under an assumed name. Pending before the Court is Ponzo's motion to suppress evidence obtained during searches of his Idaho residence.

I. **Facts**

In January, 2011, the FBI received a tip that a person resembling Ponzo who went by the name "Jay Shaw" was living at 6107 Hogg Road, Marsing, Idaho. Special Agent Douglas Hart (SA

Hart) investigated Shaw's credit history and other records. Based on his findings, SA Hart believed that it was very likely that Shaw and Ponzo were the same person.

On February 7, 2011, federal and state agents and officers apprehended Ponzo as he was driving to a visit a neighbor. What happened next is not entirely clear. SA Hart states in his affidavit that Ponzo mentioned to the arresting officers that he had two children, while Ponzo avers that an agent simply asked him about his children's whereabouts. In any event, Ponzo initially refused to tell the agents where the children were and, instead, asked to speak with his attorney. When the agents asked again, he either told them that the children were not at home or that they were in Utah with their mother. At some point during that conversation, Ponzo and the agents observed a school bus drop off children who lived in the neighborhood. Ponzo's children were not among them.

According to SA Hart, agents had earlier observed a playground at the residence and were concerned that Ponzo's children were at home and would be left unattended while Ponzo was transported to the county jail for fingerprinting. Out of an "abundance of caution," they decided to inspect Ponzo's residence to determine if the children were there or not.

What happened next is also unclear, mainly because the parties disagree about the layout of the property at 6107 Hogg

Road.  The property consists of a residence and a 12-acre cattle ranch.  According to Ponzo's affidavit, there is a fence around the entire 12-acre ranch with a "No Trespassing" sign posted close to the entrance to the property from the main road.  He also states that the residence on the property is only accessible from the main road via a private driveway that is a quarter mile long.  According to Ponzo, there is a second fence equipped with an electric wire around the residence that was locked when he left his property on the day he was arrested and the inner yard was patrolled by a specially-trained guard dog.  The government disagrees with Ponzo's description of the property but does not offer its own account.

Both sides agree that agents reached the front door. According to SA Hart, agents could hear a radio or television playing inside but nobody responded to their knocks.  They could see what they thought was a weapon through a window near the front door.  SA Hart referred to it as a "rifle" in his search warrant affidavit but Ponzo contends that agents should have been able to tell that it was an air rifle based upon its appearance. Agents also saw a surveillance camera mounted in a window.  SA Hart states that agents never entered the house and departed once they were satisfied that nobody was home.

Meanwhile, agents took Ponzo to the county jail for fingerprinting which confirmed that he was a Enrico Ponzo.  They

also spoke with several neighbors, four of whom reported that Ponzo had been acting strangely and that his wife had left him and taken their children to Utah, and one who said that Ponzo regularly patrolled the property at all hours. Another neighbor, William Clapier, reported that Ponzo had mentioned possessing firearms and had brought and used an AR-15 rifle when they went target shooting in October, 2010. SA Hart was able to conclude from those conversations that Ponzo had been living at 6107 Hogg Road for at least eight years.

Based on the gathered information, SA Hart sought and obtained a warrant to search the property at 6107 Hogg Road for evidence relating to Ponzo's false identities, his sources of income while living as a fugitive and possession of firearms. Officers executed the warrant on February 8, 2011, and discovered dozens of firearms, thousands of rounds of ammunition, dozens of publications regarding false identities, a false identification kit and more than $15,000 in currency.

On March 24, 2011, SA Hart applied for and obtained a warrant to seize computers and computer equipment from the residence. In a supporting affidavit, SA Hart stated that agents observed these items during their February, 2011, search pursuant to a warrant. He added that an anonymous cooperating witness reported receiving emails from Ponzo/Shaw during the time that Ponzo lived at 6107 Hogg Road and another anonymous cooperating

witness said that he or she had seen Ponzo using a computer inside of the residence. SA Hart asserted that, based on his training, experience and knowledge of the facts of the case, there was probable cause to believe that the computers and equipment would contain evidence relating to Ponzo's false identities, financial support during the time that he was a fugitive and other matters. Agents executed the warrant on March 28, 2011.

Ponzo moves to suppress all evidence obtained as a result of the February 8 and March 28 searches. He has submitted a memorandum in support of his motion and a reply to the government's opposition thereto.

## II. **Analysis**

### A. **February 8, 2011, Search**

Ponzo argues that the warrant authorizing the February 8, 2011 search was not supported by probable cause. He first contends that agents violated his Fourth Amendment rights because they entered the curtilage of his home in the absence of exigent circumstances. As a result, he argues, the air rifle and the surveillance camera could not be used to establish probable cause because they were the fruits of an unconstitutional search. The government disputes Ponzo's description of the layout of his property and contends that no search occurred because agents had implied consent to walk up to Ponzo's front door and knock. The

-5-

government also argues in the alternative that the warrantless search fell within the exigent circumstances exception given agents' concern about the possibility that children would be left alone in the house while Ponzo was being fingerprinted.

The Court declines to resolve these factual disputes or to decide whether agents violated Ponzo's Fourth Amendment rights by entering his property without a search warrant. Instead, it presumes, for the sake of argument, that agents discovered the air rifle and surveillance camera in the course of an illegal search and then ponders whether the subsequent search pursuant to a warrant "was in fact a genuinely independent source of the information and tangible evidence at issue here." Murray v. United States, 487 U.S. 533, 542 (1988).

The "independent source" inquiry involves a two-part test. First, the court must determine if the agents' observations during the initial, illegal search "prompted" them to seek a warrant. United States v. Dessasaure, 429 F.3d 359, 367 (1st Cir. 2005) (quoting Murray, 487 U.S. at 542). Second, the court must decide if the affidavit, stripped of the illegally obtained evidence, contained "sufficient facts to support probable cause." Id. The government bears the burden of proof on each element, and must demonstrate, by a preponderance of the evidence, that the search pursuant to a warrant was an "independent source" of the evidence that the defendant seeks to suppress. United States

v. Siciliano, 578 F.3d 61, 68 (1st Cir. 2009).

Turning to the first question, the Court finds that SA Hart would have sought a warrant even if agents had not observed the surveillance camera and the air rifle during the initial search. SA Hart had been investigating Jay Shaw since January, 2011, had collected a significant amount of information suggesting that Shaw was using a false identity and knew from the fingerprint analysis that Shaw was Ponzo's alias. He also had a neighbor's report that Ponzo possessed an AR-15 rifle and had discussed possessing firearms. In short, the Court finds that there was "ample evidence" absent the camera and air rifle "such that a reasonable officer would seek a warrant considering the totality of the circumstances." United States v. Silva, 554 F.3d 13, 19 (1st Cir. 2009); see also Siciliano, 578 F.3d at 77 (Boudin, J., dubitante) (explaining that a court applying this first part of the test may infer from the totality of the circumstances what a reasonable officer would have done had the illegal search not occurred).

The Court also finds that the affidavit, stripped of what the Court presumes without deciding was illegally obtained evidence, contained "sufficient facts to support probable cause" to search Ponzo's residence. See Dessasaure, 429 F.3d at 367. The surveillance camera was merely cumulative of the unassailable evidence that Ponzo was a fugitive from serious criminal charges

and had lived at the property under an assumed name for at least eight years. The evidence properly before the magistrate judge provided sufficient support for the magistrate judge's finding of probable cause to search the residence for evidence of Ponzo's false identities because it was reasonable to believe that Ponzo would keep such evidence in his home. See United States v. Feliz, 182 F.3d 82, 88 (1st Cir. 1999) (explaining that the necessary nexus between the premises searched and the objects sought may be inferred from the nature of the items and normal inferences about where a criminal would hide evidence of the suspected crimes).

Similarly, there was sufficient evidence that Ponzo possessed guns, apart from the air rifle observed at the residence, to support a finding of probable cause to search the residence for firearms. The magistrate judge had direct evidence from a named witness that Ponzo discussed possessing firearms and had used an AR-15 rifle at a shooting range four months prior to his arrest. SA Hart also stated his belief, based on his training and experience, that people typically keep firearms at their residence for a long period of time. This information was consistent with ongoing possession of firearms and was not, as Ponzo asserts, too stale to provide the basis for a warrant. See United States v. Neal, 528 F.3d 1069, 1074 (8th Cir. 2008) ("Information that someone is suspected of possessing firearms illegally is not stale, even several months later, because

individuals who possess firearms tend to keep them for long periods of time."); United States v. Deering, 296 Fed. App'x 894, 898 (11th Cir. 2008); see also United States v. Pierre, 484 F.3d 75, 83 (1st Cir. 2007).

The Court finds that the search pursuant to a warrant was a "genuinely independent source" of the evidence that Ponzo seeks to suppress. See Murray, 487 U.S. at 542. As such, the Court will deny Ponzo's motion to suppress the evidence discovered as a result of this search.

**B.   March 28, 2011, Search**

Ponzo also challenges the March 28, 2011, search of his residence and seizure of computers and computer equipment as "fruit of the poisonous tree," arguing that this search was an indirect consequence of the initial illegal entry onto his property. That argument is unavailing. The decision to search and seize computers and equipment was not based on anything agents observed when they were on the property without a warrant. Instead, agents first observed the computers and equipment when they later entered the property pursuant to a valid warrant that was independently supported by probable cause. See Wong Sun v. United States, 371 U.S. 471, 488 (1963) (holding that evidence that is a product of illegal police conduct may be admitted if it has become sufficiently distanced from the illegal conduct).

Ponzo also contends that the magistrate judge's probable

cause finding was not supported by the evidence. He challenges information provided by two anonymous cooperating witnesses in particular and suggests that there were "no cognizable facts" to support the statements of those witnesses regarding Ponzo's computer and internet usage. The Court disagrees with Ponzo's description of the evidence and finds that there was sufficient information in SA Hart's affidavit for the magistrate judge to conclude that there was probable cause to search and seize the computers and equipment.

C. **Franks Hearing**

The Court also denies Ponzo's request for a Franks hearing to test the veracity of statements in SA Hart's affidavit. A Franks hearing is warranted only if a defendant makes "substantial preliminary showings" that 1) a false statement or omission in a warrant affidavit was made knowingly or with reckless disregard for the truth and 2) the falsehood or omission was necessary to the finding of probable cause. United States v. Rigaud, 684 F.3d 169, 173 (1st Cir. 2012). Ponzo fails to satisfy either prong of this exacting standard.

Ponzo identifies three allegedly misleading statements or omissions which he claims entitle him to a hearing. First, he suggests that SA Hart "purposely" misrepresented the fact that the agents had "ample evidence" indicating that children were not in the residence. Second, he contends that agents knew that what

they saw was an "air rifle" and yet the affidavit reports that they observed a "rifle" inside of the residence. Those statements do not warrant a <u>Franks</u> hearing because they were not material to the issuance of the warrant. The Court has already found that the evidence agents obtained while on the property without a warrant was not necessary to the magistrate judge's finding of probable cause.

Ponzo also asserts that SA Hart was reckless because he stated his belief that the property contained evidence that Ponzo received financial support from the Mafia but omitted to report evidence that Ponzo worked as a cattle rancher and cared for his children while his common law wife worked away from the home. Ponzo offers no evidence, however, to support his assertion that agents, and SA Hart in particular, "knew" from speaking with neighbors or cooperating witnesses that the property was a "working cattle ranch," or that his wife was "gainfully employed" before she left him. His speculation about what agents might have learned as a result of those conversations falls short of the required substantial preliminary showing that agents intentionally or recklessly omitted facts from the affidavit.

**ORDER**

In accordance with the foregoing, defendant's motion to suppress (Docket No. 1629) is **DENIED**.

**So ordered.**

Dated September 9, 2013

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge