United States District Court
District of Massachusetts

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal Action No. |
| ENRICO PONZO, | ) | 97-40009-NMG |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM & ORDER

**GORTON, J.**

On November 20, 2013, after a 26-day jury trial, defendant Enrico Ponzo ("Ponzo") was convicted of 12 counts including conspiracy to violate the Racketeering Influenced and Corrupt Organizations (RICO) statute in violation of 18 U.S.C. § 1962(c); separate conspiracies to distribute and possess with intent to distribute cocaine and marijuana in violation of 21 U.S.C. § 841(a)(1) and (c); and money laundering and conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(a)(1). Following the verdict, Ponzo filed numerous motions pro se in violation of previous Orders of this Court. The Court ultimately allowed defendant's motion to proceed pro se but directed his appointed counsel, John Cunha, to continue to act as stand-by counsel during the sentencing phase of the case. The Court now proceeds to consider all pending motions.

-1-

## I.  Background

Ponzo is alleged to have been associated with the New England chapter of La Cosa Nostra during the 1980s and 1990s. At trial, the jury heard evidence that Ponzo participated in and conspired with others to commit various crimes of racketeering and violence on behalf of one of two factions that vied for control of La Cosa Nostra between approximately 1989 and 1994. In 1997, Ponzo was indicted for the above crimes along with other members and associates of New England La Cosa Nostra. Ponzo's co-defendants either pled guilty or were found guilty of various charges following jury trials in 1998 and 1999.  Ponzo did not appear at either trial because he fled from Massachusetts in or about November, 1994 and his whereabouts were then unknown.

In February, 2011, Ponzo was apprehended in Marsing, Idaho and was later transferred to this district to be tried.  He was appointed counsel in March, 2011.  That attorney represented him at considerable expense to the government for more than one year, whereupon Ponzo moved for and was assigned new counsel because of what he described as an irretrievable breakdown of the attorney-client relationship.  New counsel was appointed in October, 2012.  In January, 2013, a grand jury returned an 18-count Superseding Indictment that brought new charges based upon crimes allegedly committed after Ponzo fled Massachusetts in

addition to the crimes alleged in the previous indictment. The case proceeded to trial in October, 2013 and continued for six weeks. With leave of Court, the government dismissed three counts before the case was submitted to the jury and the jury then found Ponzo guilty of 12 of the remaining 15 counts.

Shortly after the jury returned its verdict, Ponzo moved for "new effective counsel" and filed several other motions pro se. The Court denied the motion for new counsel and struck several post-trial pro se filings from the record. Ponzo thereafter moved to proceed pro se, citing the complete breakdown of his attorney-client relationship with his second-appointed attorney. That motion was also denied in the first instance but the Court reversed its prior ruling at a hearing on February 28, 2014 and allowed Ponzo to proceed pro se thereafter. The Court denied his counsel's motion to withdraw, however, and directed Attorney Cunha to act as Ponzo's standby counsel. Ponzo's sentencing is scheduled for April 23, 2014.

Ponzo filed multiple motions pro se while he was represented by counsel in violation of previous Orders by this Court. Nevertheless, under the circumstances, the Court will now consider the motions submitted prior to the February 28, 2014 hearing. It also has advised Ponzo that any motions submitted after that date which do not relate to his sentencing will not be considered.

## II. Motion for Acquittal

### A. Legal Standard

Under Fed. R. Crim. P. 29(c), "the court may set aside the verdict and enter an acquittal." The Court must "consider the evidence as a whole taken in the light most favorable to the government" and decide whether a rational jury could have found guilt beyond a reasonable doubt. United States v. Smith, 680 F.2d 255, 259 (1st Cir. 1982).

### B. Application

Ponzo contends that there was insufficient evidence to support a conviction on any of the counts of which he was found guilty. He specifically identifies Counts 1, 2, 3, 4, 11, 12, 13 and 14 as lacking sufficient proof. For instance, he alleges that, with respect to Counts 1, 2 and 3, there was insufficient proof of his association with New England La Cosa Nostra. Second, he alleges that there was insufficient evidence that he distributed 500 grams or more of cocaine to support the jury verdict as to Count 4. Similarly, he suggests that there was insufficient evidence that he distributed 1,000 kilograms or more of marijuana despite the jury's verdict on Count 11. With respect to the money laundering allegations in Counts 12, 13 and 14, he suggests that there was insufficient evidence that the money that was allegedly laundered was derived from illegal activity.

Ponzo does not develop those arguments in the memorandum accompanying his motion and, in any event, the Court disagrees with him that no rational jury could find him guilty of those offenses beyond a reasonable doubt.

### III. **Motion for New Trial**

#### A. **Legal Standard**

The Court's authority to order a new trial is greater than its authority to grant a motion for acquittal. United States v. Ruiz, 105 F.3d 1492, 1501 (1st Cir. 1997). The Court may vacate any judgment and grant a new trial "if the interests of justice so require." Fed. R. Crim. P. 33(a). The remedy of a new trial is used "only where there would be a miscarriage of justice and where the evidence preponderates heavily against the verdict." United States v. Merlino, 592 F.3d 22, 32 (1st Cir. 2010). The Court may weigh the evidence and evaluate the credibility of witnesses but should defer to the jury's credibility assessment absent "exceptional circumstances." Id. at 32-33.

Under the cumulative error doctrine,

> individual errors, insufficient in themselves to necessitate a new trial, may in the aggregate have a more debilitating effect.

United States v. Sepulveda, 15 F.3d 1161, 1195-96 (1st Cir. 1993). Cumulative error analysis is inappropriate when the defendant complains of the cumulative effect of non-errors. United States v. Stokes, 124 F.3d 39, 43 (1st Cir. 1997).

-5-

**B.   Application**

Ponzo suggests that a new trial should be granted for a variety of reasons.

**1.   Ineffective assistance of counsel**

Most of Ponzo's arguments concern the performance of his appointed counsel.

Pursuant to Fed. R. Crim. P. 33, the Court may consider whether Ponzo received ineffective assistance of counsel in determining whether a new trial is necessary. United States v. Wilkerson, 251 F.3d 273, 278 (1st Cir. 2001).  In Strickland v. Washington, the Supreme Court articulated a two-pronged test for whether the Sixth Amendment right to effective assistance of counsel has been violated. 466 U.S. 668, 686-87 (1984).

First, the defendant must show that his counsel's representation "fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 687-88.  "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689.  Moreover, a defendant who claims that his counsel was ineffective must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

If counsel's performance does not meet that objective standard, the defendant must also show that he was prejudiced by the deficiency. Id. at 686-87.  A defendant who contends that he

was convicted as a result of his attorney's deficient performance must demonstrate a "reasonable probability that, absent the errors, the [jury] would have had a reasonable doubt respecting guilt." Id. at 695.

### a. Rebuttal witnesses

Ponzo first challenges his counsel's alleged failure to subpoena, call or interview rebuttal witnesses for trial despite Ponzo's requests that he do so. Ponzo suggests that his co-defendants who were tried previously would have been "rebuttal witnesses to the perjury of" certain cooperating witnesses called by the government. Similarly, Ponzo contends that, due to a conflict of interest, his counsel refused to call a former client, Dave Clark, who was allegedly involved in the murder of Michael Romano, Jr. and would have been "crucial" either to rebut the testimony of cooperating witness Robert Luisi, Jr. or to exculpate Ponzo on the charges against him. He also suggests that he requested that his counsel call two former police officers to rebut trial testimony.

The decision whether to call a witness is "almost always strategic" and therefore unlikely to overcome the strong presumption that declining to call the witness was "sound trial strategy." Lema v. United States, 987 F.2d 48, 54 (1st Cir. 1993) (quoting Strickland, 446 U.S. at 689). Ponzo does not overcome that presumption because he never explains what

-7-

testimony those witnesses might have offered in rebuttal. His focus on Dave Clark, who Ponzo alleges to have been involved in the murder of Michael Romano, Jr., is especially perplexing. Ponzo was not charged with the murder of Romano, Jr. and therefore it is difficult to comprehend how Clark's testimony would have been exculpatory or rebutted testimony provided by Luisi, Jr.

### b. Alibi witnesses and instructions

Ponzo also alleges that counsel refused to investigate alibi witnesses or request jury instructions on Ponzo's alibi defenses. The Court rejects the first contention for similar reasons as those described above. First, the events in question took place more than 20 years prior to trial. Ponzo's first assigned counsel noted in a pre-trial filing that it was difficult to identify and locate any alibi witnesses due in part to the age of the case (Docket No. 1789). The only potential alibi witness identified in that document was Annette Gestwicki, who testified at trial but did not provide Ponzo with an alibi. Ponzo provides the Court with no reason to conclude that any failure to investigate potential alibi witnesses further or to ask Ms. Gestwicki about Ponzo's whereabouts on specific dates 20 years ago fell below an objective standard of reasonableness. See Lema, 987 F.2d at 54-55. Moreover, it would have made

little sense to instruct the jury on an alibi defense when none was presented at trial.

### c. Constitutional right to testify

The Court also rejects Ponzo's argument that his attorney provided ineffective assistance in advising him not to testify. This Court engaged in a voir dire colloquy with Ponzo about his right to testify and Ponzo waived that right, on the record, after consulting with his attorney. There is no evidence that this Court can discern that counsel misinformed Ponzo about the consequences of testifying versus declining to take the stand or that Ponzo was coerced into waiving his right to testify. See id. at 52-53 (describing test for whether advice about testifying constituted ineffective assistance).

### d. Discovery

Ponzo also claims that he was "seriously impaired" in presenting his defense by his attorney's alleged refusal to send materials obtained through discovery to his current place of incarceration. That argument is unavailing. Ponzo did not have a right to have physical possession of all discovery materials provided by the government while he was represented by counsel and the Court had previously denied his request to act as "co-counsel", i.e. to proceed in a sort of hybrid pro se manner.

### e. Cross-examination of Jerry Matricia

The Court disagrees that counsel's representation fell below objective standards in his lengthy cross-examination of Jerry Matricia, a key government witness. Counsel impeached Matricia with numerous prior bad acts and inconsistent statements. The Court's admonishment to counsel not to dwell on the issue of the reimbursement of Matricia by the government was made at sidebar out of the hearing of the jury which eliminated any risk of prejudice. Furthermore, there is no evidence that a single admonishment about a particular line of questioning affected or was indicative of counsel's ability to represent Ponzo's interests. See United States v. Carbone, 880 F.2d 1500, 1501 (1st Cir. 1989) (explaining that defendant must show that cross-examination fell below an objective standard of reasonableness for it to constitute ineffective assistance).

### f. Ponzo's status as a prisoner

Ponzo also claims that he received ineffective assistance because his attorney 1) failed to object to testimony by government witness James Costello about visiting Ponzo "up in Walpole", i.e. at Walpole State Prison, and 2) elicited testimony from defense witness Domenic Capossella about visiting Ponzo at the same prison. Ponzo alleges that those revelations infringed upon his constitutional presumption of innocence and Sixth Amendment right to a fair trial.

The Court disagrees that such a revelation requires it to find that Ponzo received ineffective assistance of counsel. First, with respect to Capossella, it was objectively reasonable for Ponzo's counsel to ask about recent interactions with Ponzo in order to bolster the witness's claim to intimate knowledge of family affairs. Counsel could not control the fact that Capossella mentioned Walpole in his answer to the question and he certainly didn't dwell on it. With respect to Costello, it is likely that objecting to the answer to the prosecutor's question would have caused the jury to focus more on it than the jury perhaps did.

Furthermore, even if the jury inferred that "Walpole" is synonymous with "state prison", the revelation did not deny Ponzo his right to a fair trial. The statements at issue were at most "passing references" that occurred only twice during a 26-day trial during which the jury was instructed at length on the presumption of innocence. See United States v. Roux, 715 F.3d 1019, 1029 (7th Cir. 2013) (finding that single reference to "jail calls" by prosecutor did not deprive defendant of fair trial); United States v. Atencio, 435 F.3d 1222, 1236-37 (10th Cir. 2006) (finding that any harm resulting from prosecutor's single reference to defendant being "in jail" in closing argument was mitigated by instructions on presumption of innocence).

Moreover, the jury knew as a result of properly admitted testimony from Frank Hernandez and Douglas Hart that Ponzo was apprehended and arrested in Idaho after more than a decade at large. It would have been reasonable to infer from that testimony that Ponzo was jailed for at least some period of time thereafter. As a result, the Court finds no prejudice to Ponzo resulting from the two statements about visits to Walpole.

### 2. Jury Instructions

Ponzo also objects on several grounds to the judge's charge to the jury which was submitted orally and in writing.

#### a. Statute of limitations

First, Ponzo objects that the Court advised the jury that Counts 1, 2, 3, 4, 6 and 7 are subject to a five-year statute of limitations when, in fact, all 15 charges are subject to that limitations period. The Court notes at the outset that defense counsel requested that the jury be instructed that the statute of limitations for all charges was five years and also requested a specific charge as to the five-year statute of limitations with respect to the six specific counts which are the subject of Ponzo's objection. The Court informed the parties of its specific, proposed instruction on the statute of limitations before charging the jury and neither party objected to the aspect of the instruction that Ponzo challenges here.

Furthermore, any error was harmless. The jury acquitted defendant of Counts 5, 8 and 9. Counts 10 through 15 all involved conduct that occurred after Ponzo left Massachusetts. The Court instructed the jury that they could find the statute of limitations tolled during any period in which they found Ponzo to be a fugitive from justice. Given that the jury found Ponzo guilty of unlawful flight to avoid prosecution (Count 10), it may be assumed that the jury would have found the statute of limitations tolled during the relevant period.

### b. Amount of drugs

Ponzo also suggests that the Court erred in instructing the jury that they did not have to find the exact amount of drugs involved in the conspiracy. To the extent that Ponzo objects to the fact that the Court charged the jury with finding the quantity of drugs attributable to the conspiracy as a whole rather than to the defendant specifically, his argument is unavailing. The First Circuit has held that "[t]he applicable statutory maximum sentence in a drug conspiracy case is determined from a conspiracy-wide perspective." United States v. Sanchez-Badillo, 540 F.3d 24, 35 (1st Cir. 2008) (quoting United States v. Colon-Solis, 354 F.3d 101, 103 (1st Cir. 2004) (internal quotation marks omitted). Moreover, it has repeatedly condoned the practice of instructing the jury to find the amount attributable to the conspiracy rather than to the defendant:

> [O]nce the jury has determined that the conspiracy
> involved a type and quantity of drugs sufficient to
> justify a sentence above the default statutory maximum
> and has found a particular defendant guilty of
> participation in the conspiracy, the judge lawfully
> may determine the drug quantity attributable to that
> defendant and sentence him accordingly.

United States v. Gonzalez-Velez, 466 F.3d 27, 38 (1st Cir. 2006) (quoting Derman v. United States, 298 F.3d 34, 43 (1st Cir. 2002)). The First Circuit has yet to decide whether Alleyne v. United States, 133 S. Ct. 2151 (2013), supports that practice but, under prevailing circuit law, the Court finds no error.

To the extent that Ponzo challenges the fact that the Court instructed the jury to find whether the quantity of drugs involved fell within certain ranges listed on the verdict form rather than asking them to find a specific quantity, the First Circuit has upheld the practice followed by this Court. See United States v. Barbour, 393 F.3d 82, 87-89 (1st Cir. 2004).

### c.  Other objections to the charge

The other challenges to the jury instructions lack merit and are not grounds for a new trial in any event. It was proper to instruct the jury on the "well-established" principle in this circuit that the government may charge in the conjunctive but prove in the disjunctive. Furthermore, the Court disagrees that it erred in 1) using the term "facilitate" or 2) adopting the government's proposed instruction with respect to hearsay statements by co-conspirators instead of the defendant's.

### 3. Other grounds for a new trial

The Court rejects Ponzo's challenges to the denial of his pre-trial motions to suppress. The Court has already considered and rejected those arguments and will not revisit its previous rulings here.

Similarly, it disagrees with Ponzo that he had an Eighth Amendment or statutory right to be provided with the hearing aids of his choice at the government's expense. The Court provided him with an assistive listening device that he declined to use and, as the subject motion demonstrates, Ponzo was able to follow the proceedings in excruciating detail.

Furthermore, the Court disagrees that Ponzo was denied his right to be tried by a jury selected from a representative cross-section of his community, see Duren v. Missouri, 439 U.S. 357 (1979), due to the fact that the jury was empaneled during the temporary shutdown of the federal government in October, 2013. Ponzo has not shown (and cannot show) that the shutdown affected the composition of the venire or that the few jurors who were concerned about their ability to serve if not regularly reimbursed for travel expenses were a "cognizable group" under the law of this circuit. See Barber v. Ponte, 772 F.2d 982, 996-1000 (1st Cir. 1985) (en banc).

Finally, the Court finds that counsel's conduct towards Ponzo during the trial was not at all inappropriate and

disagrees with Ponzo that the government engaged in any misconduct during closing arguments or otherwise that would warrant a new trial.

**IV. Motion to reconsider denial of motion for arrest of judgment under Fed. R. Crim. P. 34**

   **A. Counts 6 and 7**

Ponzo suggests that Counts 6 and 7 failed to describe in sufficient detail the charges against him. Count 6 charges that

> From in or about 1990 and continuing until in or about November, 1994, both dates being approximate and inclusive, in the District of Massachusetts, the defendant, ENRICO M. PONZO, and others known and unknown to the Grand Jury, knowingly combined, conspired, confederated, and agreed to knowingly participate in the use of extortionate means to collect and attempt to collect extensions of credit.

Count 7, which is similarly worded, charges that

> In or about 1992, within the District of Massachusetts, the defendant, ENRICO M. PONZO, together with others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly participated in the use of extortionate means to collect and attempt to collect extensions of credit.

The Court agrees that Counts 6 and 7 would ideally have included more detail as to the alleged date, location and victim. See United States v. Tomasetta, 429 F.2d 978, 979-81 (1st Cir. 1970). The lack of detail in the Superseding Indictment is mitigated by the fact that the government provided Ponzo with the name of the victim and the Grand Jury transcripts during discovery (Docket No. 1644). Moreover, Ponzo has not shown that

he was prejudiced or surprised by the evidence presented at trial. United States v. Hallock, 941 F.2d 36, 40-41 (1st Cir. 1991) (requiring showing of surprise and prejudice at trial in reviewing district court's refusal to order bill of particulars).

**B.  Counts 11, 12, 13 and 14**

Despite Ponzo's argument to the contrary, the District of Massachusetts was an appropriate venue for his trial.  First, Counts 11 and 12 of the Amended Superseding Indictment allege conspiracies in which some overt acts occurred in Massachusetts. As a result, Massachusetts is a proper venue in which to try those counts. See United States v. Cabrales, 524 U.S. 1, 8-9 (1998) (citing Hyde v. United States, 225 U.S. 347 (1912)). Second, Counts 13 and 14 of the Amended Superseding Indictment allege that Ponzo laundered the proceeds of the conspiracy alleged in Count 11 and therefore venue is also proper in Massachusetts. 18 U.S.C. § 1956(i)(B) (specifying that venue is proper in any district where a prosecution for the "underlying specified unlawful activity could be brought" if the defendant is alleged to have participated in the transfer of proceeds of that activity outside of that district).

**C.  "Addendum" submitted March 25, 2014**

The Court will not consider the additional grounds asserted in an "addendum" mailed by Ponzo on March 25, 2014, in violation

-17-

of this Court's Order that it will not consider additional motions unrelated to sentencing at this stage.

**V.   Motion to reconsider denial of motion for immediate disclosure of favorable evidence and motion for court transcripts and to compel discovery**

The Court declines 1) to reconsider its denial of the motion for immediate disclosure of all favorable evidence, 2) to provide Ponzo with the official court transcripts of "all the grand jury, pretrial and trial proceedings" in this matter "at the expense of the government with the seized inheritance monies of Ponzo" or 3) to compel disclosure of all transcripts in the possession of the government "as discovery".  Ponzo may obtain documents relevant to his sentencing that are possessed by his standby counsel from his standby counsel.  He has been advised by this Court that his sentencing is not a second trial on the merits and that he will not be allowed to pursue it as such.

**VI.   Other pending motions**

Ponzo's motion for leave to file a reply brief to the government's opposition to the motion to arrest judgment filed by Ponzo's counsel will be denied as moot because 1) that motion has already been ruled upon, and 2) it was improperly filed in violation of this Court's previous Order forbidding Ponzo from proceeding in a sort of hybrid pro se manner.

Similarly, Ponzo's motion to strike the government's motions to strike his motions filed in violation of Court Orders

will be denied. Ponzo had no right to be personally served with pleadings when he was represented by counsel. The Court has considered the motions that were not previously struck or were re-filed but will not consider every motion struck from the docket as a result of Ponzo's willful and repeated refusal to follow orders issued by this Court. The motions of the government to strike will be denied as moot because the Court advised the parties that it would consider Ponzo's motions.

The Court will not strike references to any of Ponzo's alleged aliases or firearms from any filings with this Court. Ponzo has been tried and convicted and therefore the issue of whether any of those references is "highly inflammatory and prejudicial" is moot. In any event, the Court disagrees with Ponzo that those references are at all improper.

Finally, Ponzo's motion for leave to appeal in forma pauperis is denied without prejudice because this Court has not entered final judgment pursuant to Fed. R. App. P. 4(b)(1)(A).

**ORDER**

For the foregoing reasons,

1) Defendant's motion for acquittal or for a new trial (Docket No. 1939) is **DENIED**;

2) Defendant's motion to reconsider denial of his motion for immediate disclosure of favorable evidence (Docket No. 1940) is **DENIED**;

3) Defendant's motion to reconsider denial of his motion for arrest of judgment (Docket No. 1941) is **DENIED**;

4) The government's motion to strike defendant's pro se motions filed in violation of this Court's prior Orders (Docket No. 1958) is **DENIED AS MOOT**;

5) Defendant's motion for leave to appeal in forma pauperis (Docket No. 1959) is **DENIED WITHOUT PREJUDICE**;

6) Defendant's motion to strike the government's motion to strike for failure to serve pro se defendant Ponzo and motion for reconsideration of all stricken motions (Docket No. 1961) is **DENIED**;

7) Defendant's motion for Court transcripts and to compel discovery (Docket No. 1964) is **DENIED**;

8) The government's motion to strike defendant's latest pro se motions filed in violation of this Court's prior orders (Docket No. 1966) is **DENIED AS MOOT**;

9) Defendant's motion for leave to file a reply brief to the government's memorandum in opposition to defendant's motion for arrest of judgment (Docket No. 1980) is **DENIED AS MOOT**; and

10) Defendant's motion to strike matter as surplusage (Docket No. 1987) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated April 3, 2014