UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

***************************

UNITED STATES OF AMERICA,
          Plaintiff

vs.                              Case No. 4:97-cr-40009-NMG-5

ENRICO M. PONZO,
          Defendant

***************************


TRANSCRIPT OF MOTION HEARING **(UNSEALED PORTION ONLY)**
BEFORE THE HONORABLE LEO T. SOROKIN
AT BOSTON, MASSACHUSETTS
ON SEPTEMBER 28, 2012


APPEARANCES:

For the Plaintiff:
Michael L. Tabak, Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way
Boston, Massachusetts 02210
617-748-3203

For the Defendant:
David Duncan, Esquire and Ruth K. O'Meara-Costello, Esquire
Zalkind, Rodriquez, Lunt & Duncan, LLP
65A Atlantic Avenue
Boston, Massachusetts 02110
617-742-6020


Transcriber:  Karen M. Aveyard,
              Approved Federal Court Transcriber

-----------------------------------------------------

**TRANSCRIPTION PLUS**
**1334 ELM STREET**
**LEOMINSTER, MASSACHUSETTS 01453**
**(978) 466-9383**
**www.transcriptionplus.com**

1                    P R O C E E D I N G S

2

3              THE CLERK:  The United States District Court for the

4    District of Massachusetts is now in session.

5              THE COURT:  Please be seated.

6              THE CLERK:  The Honorable Leo T. Sorokin presiding.

7    Today is September 28th.  The case of the United States v.

8    Enrico Ponzo, Criminal Action 97-40009, will now be heard

9    before this Court.

10             Counsel please identify themselves for the record.

11             MR. TABAK:  Michael Tabak for the Government.  Good

12   morning, your Honor.

13             THE COURT:  Good morning.

14             MR. DUNCAN:  David Duncan for Mr. Ponzo.

15             MS. O'MEARA-COSTELLO:  Ruth O'Meara-Costello for

16   Mr. Ponzo.

17             THE DEFENDANT:  Good morning, your Honor.  Enrico

18   Ponzo, pro se.

19             THE COURT:  All right.  Not yet.

20             Give me one minute.  I just want to look over one

21   thing from the Government's filing.

22             (Pause.)

23             THE COURT:  Mr. Duncan was appointed at the request of

24   Mr. Ponzo?

25             THE DEFENDANT:  What's that, sir?

1          THE COURT:  I'm asking Mr. Tabak.

2          MR. TABAK:  Yes.  What happened was --

3          THE COURT:  By me?

4          MR. TABAK:  Yes.  No, by Judge Hillman.

5          THE COURT:  How did that arise?

6          It was before the case was assigned to me?

7          MR. DUNCAN:  Can I address it?

8          THE COURT:  Sure.

9          MR. DUNCAN:  Mr. Ponzo has been represented by me

10   and --

11          THE COURT:  Oh, by your law partner?

12          MR. DUNCAN:  By my partner, Norman Zalkind.

13          THE COURT:  I see.

14          From before (inaudible)?

15          MR. DUNCAN:  From before, long, long before.

16          THE COURT:  I understand.

17          MR. DUNCAN:  And so he requested Norman and that was

18   denied by Judge Gorton because Norman, after many, many years,

19   finally did not reapply for the CJA list.

20          THE COURT:  I see.

21          So he's not on the list?

22          MR. DUNCAN:  He's not on the list.

23          THE COURT:  And you were his partner and you were

24   involved in the case --

25          MR. DUNCAN:  And I have represented Mr. Ponzo before.

1          THE COURT:  I understand.

2          MR. DUNCAN:  So yes, that's how it happened.

3          (Pause.)

4          THE COURT:  All right.  I guess my first question is

5     what exactly do you mean, Mr. Ponzo, by saying you want hybrid

6     representation?

7          THE DEFENDANT:  Do you want me to speak, your Honor?

8          THE COURT:  Yes.

9          THE DEFENDANT:  Stand up?

10         THE COURT:  Yes.

11         THE DEFENDANT:  All right.

12         Yes.  Well, I believe that, you know, I've been

13    incarcerated for 20 months now and, you know, been through a

14    lot.  The Government has harassed and subpoenaed every member

15    of my family and friends during this time to the Grand Jury,

16    and I think it's harassment and malicious.  Everybody I know

17    has been subpoenaed to a Grand Jury, and everybody I talk to or

18    write to --

19         THE COURT:  Let me stop you just for a moment.

20         Two things I want to remind you about, okay.  One is

21    you always have the right to remain silent.

22         Do you remember that right, I told you about it at the

23    initial appearance?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  Okay.  And you're never required to make a

1    statement, and anytime you make a statement, you can stop at

2    any time.  But anything you do say can be used against you in a

3    court of law.  And though there's no court reporter here typing

4    away as we speak, there is a digital recording device, and

5    those microphones on your table and Mr. Tabak's table and the

6    bench record everything that we say, usually with digital

7    crystal clarity.

8                THE DEFENDANT:  Yes, your Honor.

9                THE COURT:  So I remind you of that.

10               What I'm specifically just trying to figure out is I

11   understand if Mr. Duncan represents you how this works, okay,

12   and I think you do too, and I understand if you represent

13   yourself how this works, and part of your request is to

14   represent yourself and I'm, in a minute, going to ask you a

15   series of questions about that to be sure you understand what

16   that means --

17               (There was a break in the audio.)

18               THE COURT:  -- before I decide whether you're really

19   waiving your right to assistance of counsel.  That's why I said

20   to you in the beginning, you said for yourself and I said well,

21   not yet.

22               THE DEFENDANT:  (Laughing.)

23               THE COURT:  Not to say that you won't be, but I

24   haven't done the -- asked you the questions I need to ask you

25   to be sure that you are making a knowing, intelligent,

1    voluntarily choice about these important rights that you have.

2            But hybrid representation is something different, and

3    what I'm just asking you is not why, simply what do you want,

4    that is so I understand.

5            Do you want Mr. Duncan simply to sit at the table, and

6    is it your vision that if you get what you want, that you'll

7    examine all the witnesses and you'll make the opening and

8    closing and you'll make the arguments to the jury?

9            THE DEFENDANT:  No, your Honor.

10           THE COURT:  What exactly is it that you envision with

11   hybrid representation?

12           THE DEFENDANT:  Well, like, for instance, I've been

13   asking several times for this, and on April 15th, 1997, Judge

14   Smartwood made an order --

15           THE COURT:  Swartwood?

16           THE DEFENDANT:  Yeah.

17           THE COURT:  Yes.

18           THE DEFENDANT:  Gave an order that all bad acts

19   evidence of the defendant and co-defendants are to be produced

20   forthwith, and under Federal Rule of Criminal Procedure 16(c),

21   the Government has continuing duty to provide that information.

22           So we've been going back and forth motions over this

23   and I'm saying this has already been ordered, just like in

24   your --

25           THE COURT:  If I allow your motion, when you're in

1   front of me, who is going to argue discovery issues, you or

2   Mr. Duncan?

3            THE DEFENDANT:  Well, ideally I'd like my lawyers to

4   do it, but like when something like this is going on and

5   nothing is being done about it, I would file my own motions to

6   compel discovery.

7            THE COURT:  Am I correct then, what you're thinking of

8   is that sometimes Mr. Duncan would file motions and sometimes

9   you would file motions?

10           THE DEFENDANT:  Oh no no no.  Just if there's

11  something where I feel that it's in the best interest of my

12  defense, that I would want something done about that.  Then I

13  would do it.

14           I do want counsel.  I've known Mr. Duncan --

15           THE COURT:  Do you want to act pro se?

16           THE DEFENDANT:  No, I want to be co-counsel so if

17  something isn't done or can't be done due to time restrictions

18  or, you know, their limitations of their office, then I would

19  be willing to do that on my own like I did in the reply to the

20  discovery motion.

21           THE COURT:  Let me ask Mr. Duncan something.

22           THE DEFENDANT:  Sure.

23           THE COURT:  Why don't you have a seat for a minute.

24           THE DEFENDANT:  Thank you, your Honor.

25           THE COURT:  So Mr. Duncan, can you illuminate for me a

1    little bit exactly what to the extent you understand what you

2    think Mr. Ponzo is asking for.

3           In the sense that perhaps I'm being a little bit

4    rigid, but I understand the way it's been.  You've been

5    counsel, just as in every case when I appoint a lawyer or a

6    lawyer appears retained, and you file the motions, you examine

7    the witnesses, you confer with your client about the important

8    questions and all that's transpiring, and I understand that

9    Mr. Ponzo goes pro se, he does all of that.  He examines the

10   witnesses, he makes the filings.  And I understand stand-by

11   counsel in the sense that you are there to provide advice and

12   assistance, but I'm trying to figure out by hybrid, what that

13   would look like.

14           MR. DUNCAN:  Well, I guess I should start by stating

15   what I understand it to be, and I will preface it by saying

16   it's not something I am prepared to accept, so I should start

17   there.

18           THE COURT:  All right.

19           MR. DUNCAN:  My understanding is that Mr. Ponzo would

20   talk to us, consult with us, as we have been, tell us what he

21   thought would be appropriate motions to file, and we would make

22   decisions what we would file and what we wouldn't file, and

23   then if Mr. Ponzo is not satisfied with what we file, he would

24   file something on his own.

25           THE COURT:  So in essence, in this vision, you would

1  be counsel, you would do what you ordinarily do, which I'm sure

2  you'd consult with him in any event, and he might, your client

3  or any client, might suggest to you motions to file, and

4  sometimes you'd file those and sometimes you'd think they're

5  not wise to file.

6        MR. DUNCAN:  Correct.

7        THE COURT:  But hybrid, what would make it different

8  by hybrid representation, Mr. Ponzo would have the permission

9  of the Court to file motions in addition to, or briefs in

10  addition to what you file on same or different issues.

11        MR. DUNCAN:  Right.  Effectively, to override our

12  decisions about what to file and what not to file.

13        THE COURT:  Right.

14        MR. DUNCAN:  And as I said, I'm not prepared to do

15  that.

16        THE COURT:  Right.

17        MR. DUNCAN:  So I have to say that if that is going to

18  be the model, I would move to withdraw.  Plain and simple.

19        THE COURT:  To the extent there's issues between the

20  two of you, I'm going to do that without Mr. Tabak, Mr. Ponzo,

21  so I'll give you a chance about that, but not yet, because the

22  questions of your relationship with Mr. Duncan raises privilege

23  matters, and in the ordinary course, you need not reveal in

24  front of Mr. Tabak --

25              (There was a break in the audio.)

1          THE COURT:  -- or whomever else is in the audience.

2          Anything else before I inquire into that, Mr. Tabak?

3          MR. TABAK:  Nothing beyond what's in our brief, your

4     Honor.

5          THE COURT:  All right.  I think that for the moment,

6     I'm going to clear the courtroom to find out whether there are

7     any issues between Mr. Duncan and Mr. Ponzo, and then I'll call

8     you back in, Mr. Tabak.  So now I'd ask everyone, other than

9     the marshals and defense counsel, to leave the courtroom.

10          (At 10:11:28 a.m., the courtroom was closed.)

11          **(*COLLOQUY SEALED*)**

12          (At 10:21:00 a.m., the courtroom was reopened.)

13          THE COURT:  All right.  I've spoken to Mr. Duncan.

14     I've spoken to Mr. Ponzo.  I'm satisfied that there's not an

15     issue between the two of them such that they can't work

16     together.  This is not the kind of circumstance in which a

17     client and a lawyer aren't able to work together because of

18     some relationship issue or something like that.  The issue here

19     is that Mr. Ponzo wishes to be able to direct his defense or

20     file motions when it might not have been done by Mr. Duncan,

21     perhaps for strategic reasons or the like.  And I think he

22     truly wants hybrid representation in the sense that he wants

23     the ability to file his own motions or his own briefs, but

24     doesn't want to give up his own counsel who would be also

25     filing briefs and motions and representing him.

1            So unless someone has another suggestion to me, before

2    I rule on the question of hybrid representation, I am going to,

3    I think, ask Mr. Ponzo the questions I would ask him if he were

4    asking to go pro se, although he's not at this time asking to

5    go pro se, because representing himself in part seems to me to

6    have the quality of pro se representation in that he has the

7    ability to file his own papers and to express clearly the

8    intent to do that.  Unless somebody tells me otherwise, it

9    seems to me I should ask those kinds of questions.

10           MR. TABAK:  I agree, your Honor, that that's

11   appropriate.  I would also ask, however, whether Mr. Ponzo is

12   proposing not only to be able to file motions, but if he

13   doesn't like the way Mr. Duncan questioned a witness, whether

14   Mr. Ponzo thinks he can jump up and ask additional questions;

15   if Mr. Ponzo doesn't like the way Mr. Duncan did an opening or

16   a summation, whether he thinks he can jump up and supplement

17   that.

18           THE COURT:  Well, that raises -- that's a two-part

19   question, Mr. Tabak.  I think insofar as -- Mr. Ponzo, you can

20   correct me if I'm wrong, but I read the request as such that if

21   you wish to examine a witness or you wish to make the opening

22   statement or the closing statement, you would be able to do

23   that.  That would be part of the hybrid representation if you

24   decided you wanted to do that.

25           Am I right about that?

1          THE DEFENDANT:  Well, yes, your Honor.  But yeah, the

2     trial strategy and all that, and --

3          THE COURT:  Well, but as to examining a witness or

4     not, that you might want to do that.  I mean, that's what I'm

5     hearing you saying.

6          THE DEFENDANT:  Well, I'm not prepared to do that yet,

7     but, you know, I should have that option because it is my

8     defense, according to (inaudible).

9          THE COURT:  Right.  That's what I understand, he wants

10    that option.

11         THE DEFENDANT:  Thank you, your Honor.

12         THE COURT:  As to whether the second part of what

13    you're getting at, Mr. Tabak, that if Mr. Duncan has examined a

14    witness, whether they could switch midstream, that raises not

15    only a question of hybrid representation, but another issue,

16    which is the general convention, as you know, is that

17    ordinarily judges are of the view that one person per witness,

18    one lawyer -- even if you had multiple lawyers, only one lawyer

19    examines a witness, only one makes the objections.  Whether

20    Judge Gorton would, even if there were hybrid representation,

21    permit that kind of midstream change raises still another issue

22    that seems to me is for Judge Gorton to resolve if Mr. Ponzo is

23    representing as a hybrid representation situation, because

24    that's really the control of the trial and that is clearly for

25    Judge Gorton and I think not for me.

1          So I understand why you raise it, but I think it's

2    beyond the scope of today.

3          All right.  Anything else you want to add, Mr. Duncan,

4    before I inquire of Mr. Ponzo?

5          MR. DUNCAN:  Not a this time, but afterwards, yes.

6          THE COURT:  All right.  So Mr. Ponzo, I guess what I

7    have to tell you is this:  I recognize that you're not asking

8    to only represent yourself, but as I understand it, you're

9    asking to represent yourself in part, that is you're asking for

10   the right to be able to file papers directly with the court and

11   asking for the option, as you put it, to be able to examine

12   witnesses or make the opening and closing if you so wish.

13         And so the kinds of questions I'm going to be asking

14   you are really geared to understand whether you really

15   appreciate the hazards and disadvantages of

16   self-representation, even though I understand you're not asking

17   only for self-representation.

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  So I would ask you first, have you ever

20   represented yourself in a criminal case?

21         THE DEFENDANT:  Yes, I have, your Honor.

22         THE COURT:  You've got to stand up when you answer.

23         THE DEFENDANT:  Oh, sorry.

24         THE COURT:  You have?

25         THE DEFENDANT:  Yes, I have, your Honor.

1          THE COURT:  In what kind of court?

2          THE DEFENDANT:  Oh, it was just a misdemeanor boating

3     thing, you know.

4          THE COURT:  Was it a criminal --

5          THE DEFENDANT:  Basically, yeah, it was a misdemeanor.

6          THE COURT:  A misdemeanor.  All right.

7          THE DEFENDANT:  Yeah.

8          (There was a break in the audio.)

9          THE COURT:  And was there a trial?

10          THE DEFENDANT:  No, I got the charge dismissed.

11          THE COURT:  Okay.  Is that the only time you've ever

12     represented yourself?

13          THE DEFENDANT:  Well, I've always had a lot of input

14     in the cases I had with David and Norman and --

15          THE COURT:  So is that a yes or a no?

16          THE DEFENDANT:  Um...

17          THE COURT:  Did you ever examine a witness in court in

18     a criminal case?

19          THE DEFENDANT:  No, I have not, your Honor.

20          THE COURT:  Have you ever done an opening statement?

21          THE DEFENDANT:  No, I have not, your Honor.

22          THE COURT:  And a closing statement?

23          THE DEFENDANT:  No, I have not, your Honor.

24          THE COURT:  Have you ever prepared or filed jury

25     instructions?

1          THE DEFENDANT:  No, I have not, your Honor.

2          THE COURT:  Have you ever attended law school?

3          THE DEFENDANT:  No, I haven't, but I've studied law

4    for many years.

5          THE COURT:  When you studied law, you're not a member

6    of the Bar?

7          THE DEFENDANT:  No, I'm not.

8          THE COURT:  And when you studied law, how did you

9    study the law?

10          THE DEFENDANT:  On the internet and books, and I have

11    like the whole Federal United States Code Annotated at my

12    house.

13          THE COURT:  Would it be fair to say that you're

14    self-taught?

15          THE DEFENDANT:  Yes, your Honor.  Like Abraham

16    Lincoln.

17          THE COURT:  Like Abraham Lincoln.

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Do you know any other lawyers since

20    Abraham Lincoln who were self-taught?

21          THE DEFENDANT:  No, your Honor.

22          THE COURT:  Have you ever hired a lawyer to represent

23    yourself who is self-taught in the law?

24          THE DEFENDANT:  I don't believe so, your Honor.

25          THE COURT:  Right.

1          THE DEFENDANT:  I don't believe so, your Honor.

2          THE COURT:  That might be because you cannot become a

3     member of the Massachusetts Bar, it's my understanding, if

4     you're self-taught, but you need to attend an accredited law

5     school before you take the Bar exam.

6          THE DEFENDANT:  Oh, I'm aware of that, your Honor.

7     Except in California you can do it.  California, you could

8     actually -- I've researched this, but you can actually go to

9     the bar exam without going to law school.

10          THE COURT:  Yes.  And are we in California?

11          THE DEFENDANT:  No.  No, your Honor.

12          THE COURT:  And you might want to think about

13     whether -- what are the maximum punishments, Mr. Tabak, that

14     Mr. Ponzo faces, if you know?

15          MR. TABAK:  On a number of the counts, the

16     racketeering counts, it's 20 years.  On the use and carrying of

17     a firearm in connection with certain crimes, it's 30 years.  On

18     the cocaine conspiracy, it's 40 years.  I haven't added them

19     all up though.

20          THE COURT:  And is there a mandatory minimum on any of

21     the charges?

22          MR. TABAK:  Currently, no, but we're intending to

23     supercede the indictment on the drug count.

24          THE COURT:  Which would result in?

25          MR. TABAK:  I don't recall off the top of my head, but

1    I believe there would be.

2              THE COURT:  A mandatory minimum?

3              MR. TABAK:  (Nonverbal response.)

4              THE COURT:  All right.  So Mr. Ponzo --

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  -- you're facing very serious charges.

7              THE DEFENDANT:  Oh yes, your Honor.

8              THE COURT:  You recognize that.  You put in your

9    papers that you could spend the rest of your natural life in

10   jail if you're convicted.

11             THE DEFENDANT:  Oh absolutely, your Honor.  Yes.

12             THE COURT:  So these are exceedingly serious charges.

13   This is not a boating misdemeanor charge.

14             THE DEFENDANT:  Well, yes, your Honor.

15             THE COURT:  And these are complicated charges:

16   Racketeering charges, conspiracy charges.  They span years, the

17   alleged criminal conduct.

18             THE DEFENDANT:  Yes, your Honor.  I know all the

19   elements of those charges.

20             THE COURT:  Right.

21             And other than your self-taught experience, have you

22   ever won a criminal case, other than the dismissal on the

23   boating charge?

24             THE DEFENDANT:  Yeah, won quite a few.

25             THE COURT:  Which you represented yourself.

1          THE DEFENDANT:  Oh, no, your Honor.

2          THE COURT:  Or which you were represented by somebody

3     who was self-taught in the law?

4          THE DEFENDANT:  No, your Honor.

5          THE COURT:  Do you understand that if you get

6     convicted, the Sentencing Commission has an entire set of

7     guidelines and rules that govern sentencing in Federal Court?

8          THE DEFENDANT:  Yes, your Honor.  They're advisory

9     now.

10          THE COURT:  Yes, but they apply.

11          THE DEFENDANT:  I'm aware of them.

12          THE COURT:  And the Federal Rules of Evidence is

13     another set of rules that apply here.

14          THE DEFENDANT:  Yes, your Honor.  I have the book

15     right here.  I study it every day.

16          THE COURT:  And you're familiar with the Federal Rules

17     of Criminal Procedure, I suppose?

18          THE DEFENDANT:  Yes, your Honor.  I study it every

19     day.

20          THE COURT:  And you understand these rules govern how

21     the action is to be tried?

22          THE DEFENDANT:  Yes, I do, your Honor.  I've read

23     trial transcripts for the past 20 months.

24          THE COURT:  Are you familiar with the expression that

25     "Those who have themselves for a client have a fool for a

1      lawyer"?

2              THE DEFENDANT:  Yes, your Honor.  I am fully aware of

3      that.

4              THE COURT:  That would seem to apply here, if you

5      represent in part, as you request, yourself.  That's what that

6      old maxim applies to, somebody representing themselves.

7              Do you understand that?

8              THE DEFENDANT:  I understand that, your Honor.

9              THE COURT:  And do you know that in my opinion, a

10     trained lawyer from an accredited law school with years of

11     federal criminal experience and years of criminal trial

12     practice experience would be far better to defend you and

13     represent you than yourself alone or yourself as hybridly

14     representing yourself with a lawyer?

15             THE DEFENDANT:  Yes.  That's your opinion, your Honor.

16             (There was a break in the audio.)

17             THE DEFENDANT:  I understand that.

18             THE COURT:  Do you understand that in my view, reading

19     the books is not the same as appreciating and understanding how

20     to apply the law?

21             THE DEFENDANT:  Yes, your Honor.  I don't have

22     courtroom procedure.

23             THE COURT:  And you understand that the reason they

24     call it the "practice" of law -- have you heard that

25     expression?

1          THE DEFENDANT:  Yes, I have, your Honor.

2          THE COURT:  That the reason they call it the practice

3     of law is that when people go to law school, they need to

4     practice law to gain experience in how to apply the rules of

5     law to facts, to documents, to circumstances, to different

6     contexts, so that they can become skilled, and that it takes

7     years of experience, practice, and sometimes mistakes, to

8     become sufficient to qualify for a membership on the CJA panel,

9     let alone to be of the caliber of Mr. Duncan?

10          THE DEFENDANT:  Yes, your Honor.  I know Mr. Duncan is

11     very qualified.

12          I have full faith in my lawyers.  It's just that when

13     I have a problem with some of the things, like the issues that

14     I spoke to you about earlier, I want the ability to file my own

15     motions, you know, and I don't --

16          THE COURT:  Do you understand that everything you file

17     can be used against you?

18          THE DEFENDANT:  Yes, your Honor.  I understand that.

19          THE COURT:  And in light of all that you might face

20     and all that you lack, in terms of your experience, and all

21     that you don't know from what you haven't read or haven't done,

22     you still wish the right to be able to represent yourself in

23     conjunction with Mr. Duncan?

24          THE DEFENDANT:  I wish to be co-counsel to Mr. Duncan,

25     your Honor.  Yes, I do.

1          THE COURT:  Is this decision entirely voluntary?

2          THE DEFENDANT:  Yes, it is, your Honor.

3          THE COURT:  No one is threatening you or pressuring

4    you to do this?

5          THE DEFENDANT:  No, your Honor.

6          THE COURT:  All right.  Anything else, Mr. Tabak, you

7    think I should ask Mr. Ponzo?

8          MR. TABAK:  The only other thought that I had is

9    whether he's aware that sometimes an experienced attorney may

10   decide not to do something or not to file a motion for reasons

11   that the attorney has good reason to think are in the best

12   interest of their client.

13         THE COURT:  Good question.

14         Do you understand that, Mr. Ponzo?

15         THE DEFENDANT:  Yes, your Honor.  I don't know why the

16   prosecution is giving advice on this, but I appreciate that.

17   Thank you, your Honor.

18         THE COURT:  Do you understand that at times,

19   especially for criminal defendants, it's best to not raise

20   issues until certain points in the case?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  That sometimes it's better to wait rather

23   than raise an issue, and that -- you understand that?

24         THE DEFENDANT:  I wouldn't raise an issue unless I

25   thought there was a valid motion to dispense or suppress or

1   exclude evidence.

2        THE COURT:  But you understand there's also tactical

3   or strategic decisions to be made about when to make such

4   requests, or whether it makes such requests as in one context

5   or under one rule of law as opposed to a slightly different way

6   at a different time under a different rule of law?

7        THE DEFENDANT:  Yes, I understand, your Honor.  Yeah.

8   Yes, I understand.

9        THE COURT:  And do you understand sometimes that there

10  can be great significance to such a decision, and that skilled

11  lawyers make those decisions based upon their years of

12  experience, their training in law school, their training in

13  continuing education, and the knowledge and wisdom that they've

14  gained from handling other cases?

15       THE DEFENDANT:  Yes, your Honor.  I always talk to

16  Mr. Duncan and (inaudible) about any issues I have with --

17       THE COURT:  But do you understand, if you make a

18  filing of something that they don't wish to file, you then are

19  essentially representing yourself and disregarding that

20  decision and advice of your lawyers, if I were to allow you

21  this hybrid or co-counsel representation?

22       THE DEFENDANT:  Well, like I explained to you earlier,

23  I believe 404(b) has already been ordered 15 years ago and the

24  prosecution has continuing duty to disclose that.  So I want a

25  motion done on that immediately.  I mean, I feel that that's

1    already been ordered by a judge and that needs to be given to

2    us, you know.

3           So stuff like that is what I'm talking about, you

4    know, your Honor.

5           (There was a break in the audio.)

6           THE DEFENDANT:  And I don't think that is a strategic

7    thing.  That's in my advantage to have 404(b) now, you know,

8    not six months from now or a year from now.

9           THE COURT:  Right.  But if you want to file something

10   that Mr. Duncan doesn't think you should file, that raises a

11   question of a difference of opinion about how to proceed, and

12   then what you are doing is disregarding -- if I allow you

13   hybrid representation and you file that motion or any other

14   motion, you are disregarding the advice of your lawyer.

15          Do you understand that?

16          THE DEFENDANT:  Oh, I understand that, your Honor.

17          THE COURT:  All right.

18          THE DEFENDANT:  Thank you, your Honor.

19          THE COURT:  Anything else that you think I should ask

20   Mr. Ponzo?

21          MR. TABAK:  The only other thought I had was whether

22   he understands that by making a separate filing or asking a

23   separate question, he may be undermining what his lawyer is

24   doing.

25          THE COURT:  That's true.

1           Do you understand that, Mr. Ponzo?

2           THE DEFENDANT:  Yes --

3           THE COURT:  That's said more directly than I said it.

4  But when you file something that your lawyer doesn't want to

5  file or ask a question that he doesn't want to ask, you very

6  well are probably undermining what he is doing for you.

7           THE DEFENDANT:  Yes, your Honor.  When he's willing to

8  do life in prison in my stead, then I think he can make those

9  decisions, your Honor.  I'm the one facing the rest of my life

10 in prison, not him.

11          THE COURT:  So let me ask you this question:  Do you

12 want to represent yourself?

13          THE DEFENDANT:  No, I don't.  No, your Honor.

14          THE COURT:  All right.  Anything else from either of

15 you?

16          All right.

17          THE DEFENDANT:  Thank you, your Honor.

18          THE COURT:  I'm not inclined to allow Mr. Ponzo hybrid

19 representation.  I'm prepared to hear all three of you on the

20 question.  But I'm prepared to allow Mr. Ponzo to proceed with

21 Mr. Duncan's counsel, and Mr. Duncan has indicated to me, and

22 Mr. Ponzo, there's no issues between them that would prevent

23 that from proceeding.  I'm prepared obviously to allow that.

24 I'm prepared to consider a request by Mr. Ponzo to represent

25 himself.  If you make such a request to solely represent

1    yourself, I would be inclined to appoint Mr. Duncan as stand-by

2    counsel, which would mean you're the person who makes the

3    filings, you're the person who makes the openings, closings and

4    the witnesses, but you have Mr. Duncan's experience to draw

5    upon to give you legal advice.

6              I'm not prepared to -- I'm inclined, subject to

7    hearing from the three of you, to deny the request for hybrid

8    representation, because as I understand it, all you're asking

9    for is hybrid representation.  You're not asking at the moment

10   to solely represent yourself.  I'm inclined to deny that

11   request because I don't understand the law to be, as both of

12   you have presented it to me, that hybrid representation is

13   something that you're constitutionally entitled to.  You're

14   constitutionally entitled to the assistance of counsel and

15   you're constitutionally entitled to represent yourself, but I

16   don't understand that you're constitutionally entitled to joint

17   representation by you and by appointed counsel.

18             And as a matter of discretion, I'm not inclined to

19   allow it.  To the extent that there's guidance from the case

20   law that you've given me, I don't see any particularly

21   extraordinary circumstance that would warrant that, and in my

22   discretion, I'm inclined to deny it.

23             But before I conclusively rule the request, I'm

24   prepared to hear you, Mr. Tabak, you, Mr. Duncan, and you,

25   Mr. Ponzo, on the question, if there's anything you wish to

1   add.  I thought I would share my tentative opinion.

2          MR. TABAK:  Well, the Government agrees that the law

3   is crystal clear that Mr. Ponzo does not have the right to

4   hybrid representation.  He does have the two choices that you

5   mentioned, either go totally pro se, you know, with or without

6   stand-by counsel, or to have assistance of counsel.  The

7   Government agrees with the Court's tentative views that this is

8   not a case that would warrant allowing hybrid representation,

9   and we think it should not be allowed for the reasons we

10  indicated in the brief.

11         THE COURT:  Mr. Duncan, anything you want to add or do

12  you want me to hear from Mr. Ponzo first?

13         MR. DUNCAN:  I don't think there's anything that I

14  would want to add in open court, no, your Honor.

15         THE COURT:  All right.  Do you wish to address the

16  issue in a sealed proceeding?

17         MR. DUNCAN:  I'll wait and see what the Court's ruling

18  is and then see if I want to.

19         THE COURT:  All right.  Mr. Ponzo.

20         THE DEFENDANT:  Your Honor, I --

21         (There was a break in the audio.)

22         THE DEFENDANT:  -- understand that I don't have the

23  right to be hybrid and that is totally discretion to the Court,

24  and although I disagree, I understand your ruling and I may

25  take that option someday to be pro se.

1          Would this mean that I am not allowed to file motions

2     on my own behalf or do I still have that right?

3          THE COURT:  I don't -- do you have a view of that?

4          MR. TABAK:  I think that he would not have the right.

5     I think that there have been a number of other cases where

6     motions that a client has filed pro se have been stricken by

7     the Court.

8          THE COURT:  Mr. Duncan?

9          MR. DUNCAN:  Well, to me it raises the fundamental

10    issue that I've already addressed.

11         THE COURT:  Right.  It seems to me, my view is no.  If

12    I deny the motion, you don't have the right to make your own

13    filings.  If you make a filing, it may well be struck by the

14    Court with an instruction:  Talk to your lawyer.  If your

15    lawyer wants to file it, your lawyer can file it.  That's what

16    it means to be represented by counsel.

17         Is there anything else you wish to say first,

18    Mr. Ponzo, with respect to whether or not I should allow your

19    request for hybrid representation?

20         THE DEFENDANT:  Your Honor, I strongly disagree

21    because I feel that I have valid motions that I'd like to file,

22    you know, and like I just said, I have stuff not only the 404,

23    there's also stuff with informants that -- the court hearing

24    here on, was it June 27th or whatever, the prosecution gave us

25    a letter at the court hearing, actually, that said that there

1    were no informants and there was like 50 people there.  I found

2    at least five people there that were informants and we do have

3    paperwork going.

4        And so I have a strong disagreement with stuff like

5    that, and we mentioned one of them, but there's many more.  And

6    all those people that are in there are allegedly

7    co-conspirators and stuff, and that could lead to motions to

8    dismiss, motions to exclude testimony, because they can't be

9    co-conspirators.  There's all kinds of stuff.

10        Mr. Duncan waived that at this hearing and I strongly

11    disagreed with that, and there's still issues of this going on

12    right now.  So there's lots of stuff besides that one issue.

13        THE COURT:  So what I hear from you, Mr. Ponzo, is

14    that there are various issues that you wish to raise at this

15    stage of the case --

16        THE DEFENDANT:  Yes, your Honor.

17        THE COURT:  -- that you're dissatisfied or disagree

18    with Mr. Duncan about whether to raise those issues or not.

19    I'm going to deny the motion for hybrid representation for the

20    reasons that I've already stated.  As reasons I expressed as my

21    tentative view, that is my view.  And for those reasons, as

22    well as the reasons stated in the Government's opposition, I

23    deny the request for hybrid representation.

24        At the moment, Mr. Duncan represents you.  If now or

25    at some future -- any future point you are dissatisfied with

1   Mr. Duncan's performance on your behalf and you wish to seek to

2   represent yourself, you may make such a request to the Court,

3   and I or, depending on the stage of the case, Judge Gorton,

4   will entertain that request.

5          Right now, do you wish to request to represent

6   yourself?

7          THE DEFENDANT:  Not at this point, your Honor.

8          THE COURT:  At this point, are you satisfied to

9   proceed with Mr. Duncan?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  All right.  Anything else, Mr. Tabak?

12          MR. TABAK:  No, your Honor.

13          THE COURT:  Anything else, Mr. Duncan?

14          MR. DUNCAN:  No, your Honor.

15          MR. TABAK:  I would just inquire so that we can

16   conclude the proceeding, having dealt with whatever needs to be

17   dealt with, whether Mr. Duncan and Mr. Ponzo want the courtroom

18   to be cleared again so that they can have further conversation

19   with you, which I thought Mr. Duncan was indicating.

20          THE COURT:  Do you need that or want that, Mr. Duncan?

21          MR. DUNCAN:  Um...

22          THE COURT:  I'm prepared to do it if you do.

23          MR. DUNCAN:  I don't think at this time, your Honor,

24   no.

25          THE COURT:  All right.  Just so we're clear in one

1   respect, with respect to the record, I make my ruling based

2   upon all that's before me, but without relying upon one aspect

3   of the discussion that we had when the courtroom was cleared --

4               (There was a break in the audio.)

5               THE COURT:  -- regarding what might transpire if I did

6   allow hybrid representation.  As I ruled on the merits of -- my

7   opinion on the merits of hybrid representation without -- just

8   thinking about what hybrid representation means in terms of

9   this case, but not what other motions might follow from that

10  that might come from Mr. Duncan, all right.

11              THE DEFENDANT:  Other motions from Mr. Duncan, yes.

12              THE COURT:  No.  What I'm just saying is with respect

13  to the record so we're clear, I ruled based upon the request,

14  based upon what I believe hybrid representation means, and not

15  because if I allowed it, Mr. Duncan might file another motion.

16              THE DEFENDANT:  Oh, I see.

17              THE COURT:  All right?

18              THE DEFENDANT:  Thank you, your Honor.

19              THE COURT:  All right.  So the motion is denied.

20  Mr. Duncan proceeds as counsel for Mr. Ponzo.  At this time,

21  there's no request for Mr. Ponzo to represent himself, and both

22  Mr. Duncan and Mr. Ponzo, am I correct, are satisfied at this

23  moment to proceed with the attorney-client relationship.

24              Is that correct, Mr. Duncan?

25              MR. DUNCAN:  Yes, your Honor.

1        THE COURT:  All right.  Anything else?

2        THE DEFENDANT:  I'd like to know if Mr. Duncan adopts

3   my reply to the discovery motion.

4        MR. DUNCAN:  I do not, your Honor.

5        THE COURT:  All right.  So he does not.

6        Is that something that's already been -- is that a

7   document purportedly replying to various filings regarding an

8   appeal of an order that I made to Judge Gorton, or is that

9   something before me, just procedurally?

10       MR. TABAK:  I think procedurally, it's before Judge

11  Gorton because it's a reply brief on the objection to your

12  Honor's discovery motion.

13       THE COURT:  And so I have ruled on discovery.

14  Mr. Duncan filed an objection to that with a supporting memo.

15  You filed a response, Mr. Ponzo.  I'm not going to touch that

16  document.  That relates to something pending before Judge

17  Gorton, therefore it's for Judge Gorton to strike it or not

18  strike it, it seems to me, but (inaudible) respond to a motion

19  if somebody wants to file a motion to strike it.  But since

20  that's on appeal of my order, I don't think it would be proper

21  for me to be weighing in on what filings are appropriate or

22  not.

23       MR. DUNCAN:  Your Honor, I think it might be

24  appropriate just to have a brief sealed hearing at this time.

25  Thank you.

1          THE COURT:  Fine.  We'll do that right now.

2          All right.  I'll clear the courtroom and I will have

3     another sealed conversation with Mr. Ponzo and Mr. Duncan.

4          (At 10:48:39 a.m., the courtroom was closed.)

5          *(*COLLOQUY SEALED*)*

6          (At 11:00:25 a.m., the courtroom was reopened.)

7          THE COURT:  So Mr. Tabak, I've had a further

8     discussion with Mr. Duncan and Mr. Ponzo.  I'm giving Mr. Ponzo

9     a week right now to consider whether or not he wishes to make a

10    request of the Court to proceed pro se.  That week should give

11    Mr. Duncan sufficient time to speak with Mr. Ponzo, give him

12    his advice as to what it means and what it doesn't mean and how

13    it might work, and then next Friday at 11 o'clock --

14          (There was a break in the audio.)

15          THE COURT:  -- we'll have a further hearing where I

16    will ask him whether he wishes to request to represent himself

17    or not.  He does not have to.  He has appointed counsel.

18    Appointed counsel can remain as his lawyer.  They get along,

19    but there is this issue about motions and other things

20    Mr. Ponzo would like filed that he and Mr. Duncan disagree.  So

21    we'll have a further proceeding then to hopefully clarify that

22    issue.

23          Anything else, Mr. Tabak?

24          MR. TABAK:  No, your Honor.

25          THE COURT:  Anything else, Mr. Duncan?

1          MR. DUNCAN:  No, your Honor.

2          THE COURT:  Anything else, Mr. Ponzo?

3          THE DEFENDANT:  No, your Honor.  Thank you.

4          THE COURT:  We're adjourned.

5

6          (The hearing was concluded.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

       I, Karen M. Aveyard, Approved Federal Court
Transcriber, do hereby certify that the foregoing transcript,
consisting of 33 pages, is a correct transcript prepared to the
best of my skill, knowledge and ability from the official
digital sound recording of the proceedings in the
above-entitled matter.

/s/ Karen M. Aveyard

Karen M. Aveyard

October 24, 2012

Date